EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Luis Manuel López Colón, Migdalia Elsa Benítez Sánchez y la SLG<br><br>    Demandantes-recurridos<br><br>        v.<br><br>Hon. William Miranda Marín, Su esposa Fulana de Tal y la SLG; et als<br><br>    Demandados-peticionarios | Certiorari<br><br>2005 TSPR 197<br><br>166 DPR ____ |

Número del Caso: CC-2004-1120
          Cons. CC-2004-1122

Fecha: 16 de diciembre de 2005

Tribunal de Circuito de Apelaciones:

          Región Judicial de Caguas Panel X

Juez Ponente:

          Hon. Andrés Salas Soler


Abogados de la Parte Peticionaria:

          Lcdo. Luis Pabón Roca
          Lcda. Grisselle González Negrón

Abogado de la Parte Recurrida:

          Lcdo. Juan Javier Guadalupe Díaz

Oficina del Procurador General:

          Lcda. Sarah Y. Rosado Morales
          Procuradora General Auxiliar

Materia: Sentencia Sumaria y Discrimen Político.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Luis Manuel López Colón,
Migdalia Elsa Benítez
Sánchez y la SLG

    Demandantes-recurridos

        v.                     CC-2004-1120     CERTIORARI
                                     Cons.
Hon. William Miranda Marín,      CC-2004-1122
su esposa Fulana de Tal y la
SLG; et als

    Demandados-peticionarios

OPINIÓN DEL TRIBUNAL EMITIDA POR EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ

San Juan, Puerto Rico, a 16 de diciembre de 2005

En mayo de 2004, nueve policías municipales[1], presentaron demanda en daños y perjuicios ante el Tribunal de Primera Instancia, Sala Superior de Caguas, contra el Municipio Autónomo de Caguas, su alcalde, el Hon. William Miranda Marín, el Lcdo. Alí Laboy Ramos, y el Sr. Agustín Cartagena.[2] Los referidos funcionarios fueron todos demandados tanto en su carácter personal

---

[1] Luis Manuel López Colón, Miguel Aponte Rivera, Regino Serrano Mercado, Carlos Rubén Vázquez Morales, Juan Bautista Reyes López, Benjamín García Reyes, Félix Antonio Álamo Cotto, Juan Carlos Sánchez, y Vicente Álvarez Aponte.

[2] Estos dos últimos desempeñaron el cargo de Comisionado de Seguridad Pública de la Policía Municipal de Caguas Laboy Ramos ocupó dicho

(continúa…)

⸱como en su carácter oficial; también fueron demandadas sus respectivas esposas y sociedades legales de gananciales.

La acción, según se expresó en la demanda, estaba basada en la Constitución del E.L.A., en la Ley de Derechos Civiles de Puerto Rico, en la Constitución de los Estados Unidos y en la Ley Federal de Derechos Civiles. En la referida demanda, los policías codemandantes alegaron que eran todos empleados municipales de carrera y que llevaban más de dieciséis años en la Policía Municipal de Caguas. Sostuvieron en la misma, que a raíz del nombramiento de Laboy Ramos como Comisionado de Seguridad Pública de la Policía Municipal de Caguas, por el alcalde William Miranda Marín --ambos conocidos afiliados al Partido Popular Democrático, en adelante PPD-- se inició contra ellos un patrón de hostigamiento y persecución política evidenciado por una actitud repetitiva de actos ilegales realizados con el alegado propósito de despojarlos de sus puestos regulares y de las funciones inherentes al mismo.

Dicho alegado patrón de conducta discriminatoria fue realizado por los referidos funcionarios, según los codemandantes, por razón de que éstos eran "conocidos afiliados" al Partido Nuevo Progresista, en adelante PNP, y que "varios de ellos militaban activamente en el mismo". En

---

cargo del 14 de enero de 1997 al 30 de noviembre de 1999, bajo la administración del Hon. William Miranda Marín. Cartagena ocupó el mismo cargo del 1 de enero de 2000 al 31 de diciembre de 2000, también bajo la administración del Hon. William Miranda Marín.

general, señalaron que no habían sido ascendidos a rangos superiores, ni habían recibido aumentos salariales acordes a los años de experiencia, mientras que otros policías con rangos inferiores habían recibido aumentos salariales significativos. Señalaron, además, que habían sido trasladados y reubicados por los demandados a realizar funciones que no estaban relacionados con el rango y el puesto que debían ejercer, así como tampoco se les había provisto los recursos, tales como radios, transmisores, vehículos oficiales, uniformes y otros para realizar su trabajo.[3]

---

[3] Las alegaciones específicas de los codemandantes son las siguientes:

Luis Manuel López Colón alegó:
  a. que mientras realizaba funciones de vigilancia en el estacionamiento de los vehículos del Departamento de Obras Públicas no tenía personal a cargo y carecía de radio transmisor y vehiculo oficial lo que ocasionaba que tuviera que dar vigilancia dando largos tramos a pie.
  b. Que otro personal de la Guardia Municipal con menos tiempo de servicio y menor rango devengaba un salario mensual mayor que el de éste.

Por su parte, Miguel Aponte Rivera alegó:
  a. que había brindado 20 años de servicio en la Guardia Municipal y devengaba un salario de $1,310.00.

Regino Serrano Mercado alegó:
  a. que su rango era de cabo y se le habían asignado tareas de plantón sin el equipo necesario.
  b. que no se le estaba pagando conforme a la escala salarial de su rango.

Carlos Rubén Vázquez Morales sostuvo:
  a. que llevaba 19 años de servicio y no recibía la paga adecuada, siendo dicha cantidad inferior a la que recibían guardias con menos años de servicio.
  b. que dicho acto era uno de discrimen por razones político partidista.

(continúa…)

En fin, solicitaron del foro primario que declarase con lugar la referida demanda y condenara a los codemandados al pago solidario de $200,000 para cada uno de los policías demandantes, $200,000 para cada una de sus esposas, $200,000 para las respectivas sociedades legales de gananciales compuestas por éstos y aquéllas, más las costas, gastos y honorarios de abogado.

El Municipio contestó la demanda; en dicha contestación se negaron las alegaciones de discrimen y se afirmó que se desconocía la afiliación política de los demandantes. En específico, se alegó que en la Policía Municipal de Caguas existían personas con distintas ideologías políticas, que el trabajo y forma de supervisión de las labores de ésta se asignaban a base de las necesidades, disponibilidad de equipo, y mejor utilización de recursos, por lo que no todos los guardias y/o policías contaban con autos, motoras o medios de transportación o comunicación. Además, se alegó que las decisiones para proveer el servicio de vigilancia a

---

c. que fue obligado a recibir readiestramiento sin recibir pago extra por ello.

Juan Bautista Reyes Flores, Benjamín García Reyes, Félix Antonio Álamo Cotto, Juan Carlos Sánchez Concepción y Vicente Álvarez Aponte alegaron, respectivamente, que:
   a. No recibían la paga adecuada con relación a los años de servicio que habían prestado, además de ser discriminados por sus creencias políticas.
   b. que los actos u omisión de una justa retribución económica habían mermado o impedido mayores ingresos a la Sociedad Legal de Gananciales compuesta por éstos y sus cónyuges.
   c.

la comunidad de Caguas no se hacían en consideración a ideas políticas.

El Municipio sostuvo, además, que los codemandantes habían recibido aumentos, por distintos conceptos, casi todos los años desde que comenzaron a trabajar para la Policía Municipal de Caguas. En especial, se alegó que los codemandantes no habían agotado los remedios administrativos ya que las reclamaciones del sistema de personal tenían que ventilarse ante la Junta de Apelaciones de Empleados de Servicio Público, en adelante JASAP, quien tenía jurisdicción primaria sobre las mismas.

Por su parte, el Alcalde, Hon. William Miranda Marín, contestó la demanda, negando conocer la afiliación política de los codemandantes, por lo que alegó que nunca había discriminado contra ellos por esa causa ni por ninguna otra. Además de la alegación anterior, reprodujo los demás planteamientos que hiciera el Municipio en su contestación a la demanda, los cuales expresamos anteriormente.[4]

La parte demandada <u>tomó deposiciones a seis de los policías codemandantes</u>. En síntesis, los policías sorpresivamente declararon que <u>no</u> eran conocidos afiliados al PNP sino meramente simpatizantes de dicho partido, y uno de ellos --Juan Bautista Reyes López[5]-- simpatizante del

---

[4] No surge del expediente que el Lcdo. Alí Laboy y el Sr. Agustín Cartagena hayan contestado la demanda.

[5] Éste último, simpatizante del PPD, declaró que la razón por la cual había instado la demanda por alegado discrimen político fue porque se le había ordenado a tomar un

(continúa…)

PPD. Testificaron que, a su entender, ni el ex-Comisionado de la Policía, Lcdo. Alí Laboy, ni el Hon. William Miranda Marín conocían su afiliación política. En consecuencia, ninguno de los policías testificó sobre actos específicos de alegado discrimen realizado por alguno de los referidos funcionarios.

En específico, tres de los policías demandantes alegaron que habían sido trasladados y reubicados a realizar funciones que no estaban acorde con su rango y puesto y para las cuales no se les brindaba el equipo necesario[6]. Sin embargo, éstos admitieron haber presentado apelaciones ante JASAP [7], en el 1998, por estos mismos alegados hechos discriminatorios. Las referidas apelaciones fueron todas desistidas con perjuicio y archivadas por la mencionada agencia en el 2000. Los restantes guardias declararon que las funciones que realizaban estaban de acuerdo a la descripción del puesto que ocupaban.

Además, los policías demandantes aceptaron haber recibido aumentos de sueldo, generales, estatutarios y por méritos durante el período en que sufrieron el alegado discrimen político. Ninguno declaró que recibiera un sueldo por debajo de la escala salarial del puesto que ocupaba.

---

adiestramiento en la Academia de la Policía durante los años 1997-1998 y no se le había pagado extra por ello.

[6] Luis M. López Colón, Vicente Álvarez Aponte, y Miguel Aponte Rivera.

[7] Querella núm. T-X 98-12-590 presentada el 23 de noviembre de 1998.

Así las cosas, el Municipio de Caguas presentó una moción de sentencia sumaria solicitando la desestimación de la demanda instada en su totalidad. La misma fue acompañada de las deposiciones tomadas a los policías demandantes, certificaciones oficiales, expedientes de personal y las apelaciones y resoluciones de JASAP en el caso T-X 98-12-590. En dicha solicitud se adujo, como hechos materiales incontrovertidos basados en las deposiciones tomadas a los demandantes, lo siguiente: primero, que los demandantes Luis M. López Colón, Regino Serrano y Miguel Aponte habían apelado ante JASAP las mismas actuaciones que ahora reclamaban en la demanda y que dichos codemandantes habían presentado una solicitud de desistimiento ante esta agencia, siendo su acción archivada con perjuicio en agosto del 2000, antes de que se presentara la demanda objeto del presente caso; segundo, que los restantes codemandantes nunca acudieron ante JASAP a apelar las actuaciones del Municipio relacionadas a las condiciones de trabajo que plantearon en la demanda, por lo cual, al ser de aplicación la doctrina de jurisdicción primaria, era la referida agencia quien tenía jurisdicción para resolver los asuntos de personal. Sobre este particular, se sostuvo que ninguna de las alegaciones de la parte demandante permitía concluir que en el presente caso concurrían las circunstancias que justificasen preterir el trámite administrativo.

En específico, el Municipio señaló que la parte demandante no podía presentar prueba fehaciente que

estableciera que las alegadas actuaciones de éste ni de los funcionarios demandados estuviesen motivadas por discrimen político ni que demostrase que éstos habían sido hostigados o perseguidos por motivo de sus ideologías políticas. En vista de ello, el Municipio sostuvo que los codemandantes carecían de causa de acción ya que en las deposiciones tomadas a los codemandantes éstos admitían no tener evidencia que demostrase que el Alcalde William Miranda o los supervisores y/o comisionados de la policía, en específico, el Lcdo. Alí Laboy, tuviesen conocimiento de su afiliación política; más aún, cuando admitieron que no participaron activamente de actividades político partidista. Por ello, sostuvo el Municipio que los codemandantes no alegaron actuaciones discriminatorias por parte de éste, ni en su carácter oficial, ni en su carácter personal.

Adujo, además, el Municipio en la referida moción que los codemandantes admitieron que las condiciones de empleo, que ellos alegaron ser discriminatorias, eran las mismas de otros compañeros, sin conocer si todos ellos compartían su misma ideología política; en otras palabras, que los policías no podían identificar cuáles policías municipales identificados con otro partido político recibían un trato preferencial o distinto a ellos. A su vez, señaló que los codemandantes no realizaban funciones fuera de las que comprendía su cargo, que éstos habían declarado que recibieron aumentos de sueldo por distintos conceptos antes,

durante, y después del alegado periodo discriminatorio[8], y que ninguno recibía una paga que estuviese por debajo de la escala salarial del puesto que ocupaban.

Por último, el Municipio alegó que la causa de acción por discrimen presentada por los codemandantes había prescrito, ya que los alegados daños habían ocurrido en o antes de 1997 y la demanda fue presentada el 29 de diciembre de 2000, o sea, fuera del término prescriptivo de un (1) año dispuesto por el Artículo 1868 del Código Civil, 32 L.P.R.A. sec. 5298.

Los codemandantes se opusieron a la solicitud de sentencia sumaria presentada por el Municipio. Ello no obstante, dicha oposición se limitó a señalar --única y escuetamente-- que la naturaleza de su reclamación, al tratarse de una violación de derechos civiles, justificaba preterir el trámite administrativo y a alegar que el discrimen político era un daño continuo, por lo cual no estaba prescrita la acción. En el escrito en oposición, <u>no se hizo referencia alguna en cuanto a las alegaciones del Municipio sobre la insuficiencia de la prueba de los codemandantes para probar una causa de acción por discrimen político</u>. Tampoco se adujeron hechos que estuviesen en controversia, ni se acompañó dicha oposición con declaraciones juradas ni alguna otra prueba documental para

---

[8] Surge de las deposiciones tomadas a los codemandantes que todos recibieron aumentos de sueldo durante los años 1994 al 2001.

rebatir los hechos incontrovertidos alegados por el Municipio.

El foro primario acogió la solicitud de sentencia sumaria presentada por el Municipio y procedió a dictar sentencia desestimando la demanda instada en contra de todos los demandados. El referido foro determinó que la bien fundamentada moción sostenía plenamente la alegación de éste en cuanto a la insuficiencia de la evidencia de los demandantes para sostener una causa de acción por discrimen político. Ello, debido a que la parte demandante no presentó prueba fehaciente que demostrase que las alegadas actuaciones del Municipio estuvieran motivadas por discrimen político, ni que controvirtiera los hechos alegados por el Municipio; evidenciado lo anterior por la carencia de documentos, por parte de los codemandantes, que controvirtiesen los hechos alegados en la referida moción.

Concluyó dicho foro, además, que el hecho que algunos de los policías demandantes hubieren presentado una querella ante JASAP, por los mismos alegados actos discriminatorios, que éstos hubieren desistido de la misma y que la agencia hubiese archivado el caso con perjuicio sin que dicha decisión fuese apelada, impedía que los mismos pudiesen levantar nuevamente los mismos planteamientos por medio de la demanda instada.

Sobre las alegaciones relacionadas con el sistema de personal de los restantes policías, el foro de instancia determinó que el foro con jurisdicción exclusiva sobre las

mismas era JASAP, por lo cual se encontraba impedido de ejercer la misma.

Sobre la alegación de prescripción, el tribunal de instancia determinó que siendo el Lcdo. Alí Laboy la persona identificada en la demanda como la que cometió los alegados actos discriminatorios y habiendo cesado en sus funciones el 30 de noviembre de 1999, el término de un año para presentar la acción por discrimen había prescrito el 30 de noviembre de 2000. Expresó el mencionado foro que, aun cuando la parte demandante alegó que se trataba de un daño continuado, ésta no presentó contradeclaraciones ni contradocumentos para apoyar dicha alegación.

Inconformes con la anterior determinación, los codemandantes acudieron, vía recurso de apelación, ante el Tribunal de Apelaciones. Alegaron como errores cometidos por el foro primario, el determinar que no hubo discrimen en su contra, al concluir que no hubo suficiencia de prueba y al concluir que la causa de acción estaba prescrita.

El foro apelativo intermedio expresó, en la sentencia que emitiera, que las alegaciones de los codemandantes eran unas "preocupantes" y que existían controversias pendientes de adjudicar. Entendió dicho foro, que la alegada prescripción de las causas de acción sobre discrimen político y los correspondientes daños era un hecho esencial y material; ello, según expresó, porque para determinar el momento en que comienza a transcurrir el término prescriptivo de un (1) año tenía que determinarse el momento

específico en que el perjudicado advenía en conocimiento del daño. Dicho aspecto, señaló el foro apelativo, no era uno fácil de determinar, ni podía resolverse por la vía sumaria.

Sobre la determinación de instancia en cuanto a que los codemandantes no presentaron ninguna prueba que controvirtiera los hechos establecidos por el Municipio de Caguas en su solicitud de sentencia sumaria, el foro apelativo expresó que:

> Al examinar la solicitud de sentencia sumaria, aunque bastante bien fundamentada, aún quedan dudas y preocupación sobre la verdad de los hechos. Aunque podría tenerse la impresión de que la oposición presentada por los Apelantes no aportó nada que refutara la solicitud de los Apelados, ni en menor grado, controvirtiera el conjunto de hechos esenciales y materiales a su causa, según establecieron como incontrovertidos, los Apelados, ello no obra a favor de que automáticamente se resuelva sumariamente. La causa es una de inquietantes reclamaciones. (Énfasis nuestro).

En consecuencia, el foro apelativo dictó sentencia revocando al foro primario y ordenándole a que celebrara vista evidenciaria.

Inconformes con esta determinación, el Municipio de Caguas, y el Procurador General, en representación del Hon. William Miranda Marín, acudieron ante este Tribunal, de forma separada, mediante recursos de certiorari. Plantearon, en esencia, los mismos señalamientos de error. En ellos se le imputa al foro apelativo intermedio haber errado, en síntesis y en lo pertinente:

> al ordenar la celebración de una vista evidenciaria por entender que existían dudas sobre la veracidad de los hechos que surgen de la evidencia presentada con la moción de sentencia

sumaria, cuando la parte recurrida no aportó prueba para controvertir tales hechos,

al resolver que quedó duda acerca de que los apelantes no ofrecieron suficiente prueba como para establecer una causa de acción por discrimen político,

al resolver que no se podía determinar que la acción estaba prescrita, y

al resolver que la acción justificaba preterir el trámite administrativo.

Consolidamos los recursos radicados. Le concedimos a la parte recurrida el término de veinte (20) días para mostrar causa por la cual no se debía expedir el auto solicitado y dictar Sentencia revocatoria de la emitida en el presente caso por el Tribunal de Apelaciones. Contando con la comparecencia de las partes, y estando en condiciones de resolver el recurso, procedemos a así hacerlo.

I

Por estar relacionados, discutimos conjuntamente los señalamientos de error primero y segundo. Alegan los peticionarios que el Tribunal de Apelaciones erró al ordenar la celebración de una vista evidenciaria ya que era claro que los codemandantes no tenían una causa de acción por discrimen político. Veamos.

Establece la Sección 1 del Artículo II de la Constitución del Estado Libre Asociado de Puerto Rico, 1 L.P.R.A. Tomo I, que "no podrá establecerse discrimen alguno por motivo de raza, color, ideas políticas o religiosas…". En virtud del anterior mandato, y de forma consistente, este

Tribunal ha expresado que los empleados públicos gozan de protección en sus cargos, contra el discrimen por ideas políticas. Alberty v. Bco. Gubernamental de Fomento, 149 D.P.R. 655 (1999); McCrillis v. Aut. de Navieras de P.R., 123 D.P.R. 113 (1989); Ramos v. Srio. de Comercio, 112 D.P.R. 514 (1982).

Vale la pena destacar que la gran mayoría de las decisiones emitidas por este Tribunal respecto a la materia en controversia han atendido el discrimen político dentro de una situación en que el empleado público es uno de confianza y éste ha sido despedido; esto es, la elaboración de normas probatorias para establecer el mismo se ha dado dentro de este contexto.[9] En atención a ello, es necesario señalar que en el presente caso ni se trata de empleados de confianza ni de una demanda por despido. El mismo trata de alegaciones hechas por empleados de carrera que alegan que el patrono realizó ciertas actos                --alegadamente motivados por discrimen político-- que resultaron perjudiciales para ellos. Ello no obstante, somos del criterio que la normativa que expondremos a continuación, la cual trata sobre

---

[9] La definición y distinción entre el empleado de carrera  y el empleado de confianza ha sido atendida por nuestra jurisprudencia. Siendo la mayor diferencia entre estas dos categorías de empleados que los primeros deben pasar por el proceso de reclutamiento y selección que detalla la Ley de Personal de Servicio Público, 3 L.P.R.A. secs. 1301 et seq. y que gozan de seguridad en el empleo, por lo cual sólo pueden ser destituidos por justa causa. Véase, Giovanneti v. Estado Libre Asociado de Puerto Rico, res. el 9 de marzo de 2004, 2004 T.S.P.R. 46; Matías v. Municipio de Lares, 150 D.P.R. 546 (2000); Marrero Caratini v. Rodríguez, 138 D.P.R. 215 (1995).

empleados de confianza que han sido despedidos, <u>es aplicable también, sustancialmente, al empleado de carrera y que abarca situaciones como las del presente caso donde el empleado alega actos del patrono que le fueron perjudiciales</u>.

Este Tribunal ha resuelto que se establece una presunción, o caso *prima facie* de discrimen político, en la situación de un empleado público de confianza que ha sido cesanteado o despedido, cuando éste <u>prueba</u>  los siguientes hechos: (1) que no hay un motivo racional para su despido, y (2) que ha sido sustituido por una persona que pertenece a un partido distinto al suyo, el cual es el mismo de la autoridad nominadora. <u>McCrillis</u> v. <u>Aut. Navieras de Puerto Rico</u>, ante; <u>Báez Cancel</u> v. <u>Municipio de Guaynabo</u>, 100 D.P.R. 982 (1972); <u>Rodríguez Cruz</u> v. <u>Padilla Ayala</u>, ante. En <u>Rodríguez Cruz</u> v. <u>Padilla Ayala</u>, ante, <u>añadimos</u> que, el empleado deberá demostrar, además, que está identificado claramente con un partido político.

De los requisitos enumerados anteriormente, para establecer una presunción por discrimen político, al empleado de carrera <u>sólo</u> deben aplicarle: (1) el demostrar que no hubo justa causa o motivo racional para el despido <u>o acción perjudicial</u> de que se trate y (2) que es de una clara identificación política. El requisito en cuanto a demostrar que ha sido sustituido por otra persona perteneciente a un partido distinto al suyo no debe aplicar a los casos de empleados de carrera ya que éstos son aquellos que gozan de

un derecho propietario en el empleo, tienen un reconocido interés en la retención de su puesto, tienen derecho a permanencia y sólo pueden ser removidos de sus puestos por justa causa, previa formulación de cargos y vista. Véase: Matías v. Municipio de Lares, ante; Marrero Caratini v. Rodríguez, ante.

En McCrillis v. Aut. Navieras de Puerto Rico, ante, señalamos que, respecto a los aspectos procesales y probatorios, una demanda fundada en un despido por razones políticas es una acción civil ordinaria donde el demandante tiene el peso y la obligación primaria de presentar prueba. Regla 10(A) y (B) de Evidencia, 32 L.P.R.A. Ap. IV. Para que pueda inferirse el discrimen político, el demandante tiene que aportar prueba que establezca los hechos básicos antes mencionados. De así hacerlo, entonces el demandado vendrá obligado a ofrecer prueba conducente a demostrar la no existencia de los hechos básicos y, en consecuencia, la del hecho presumido. *Íbid*, pág. 141.

En McCrillis v. Aut. Navieras de Puerto Rico, ante, expresamos, además, que la mera alegación de discrimen político no activa la presunción o inferencia de discrimen[10] y que el demandante viene obligado a establecer los requisitos anteriormente expresados y, además, que el empleado de confianza despedido tiene el peso inicial de probar, por preponderancia de la prueba, que la conducta

---

[10] Añadimos allí que, la mera alegación de un hecho básico, sin que haya sido debidamente establecido, no activa una presunción que permita la inferencia de un hecho presumido.

protegida fue el factor sustancial o motivante para la acción de despido. De otra forma, no sería posible ni razonable exigirle al Estado que derrote una presunción sostenida solamente por una alegación.

También reconocimos en McCrillis, ante, que la norma adoptada en Puerto Rico era muy similar a la norma probatoria establecida en la jurisdicción federal en Mt. Healthy City Board of Ed. V. Doyle, 429 U.S. 274, (1997). A tenor con la misma, para poder prevalecer un demandante en una acción al amparo de la Primera Enmienda de la Constitución de Estados Unidos, fundada en discrimen político, la mera alegación de su existencia no es suficiente. El demandante tiene que cumplir con los requisitos de prueba necesarios para establecer su reclamación. Específicamente, tiene el peso inicial de probar, por preponderancia de la prueba, que la conducta protegida fue el factor "sustancial" o "motivante" para la acción de despido. Una vez el empleado cumple con su deber de probar un caso *prima facie*, le corresponde al Estado demostrar que el demandante fue despedido por otras razones legítimas ajenas a su afiliación política. Véase: McCrillis, ante, a la pág. 142.

El análisis establecido en Mt. Healthy, ante, para los casos por discrimen político, transfiere el peso de la prueba al patrono una vez el empleado demandante produzca suficiente evidencia *prima facie*. Lo que significa que, si el empleado demandante ha establecido un caso *prima facie*

por discrimen, el patrono, para prevalecer, tendrá que producir suficiente evidencia tendente a demostrar que la acción adversa ocurrió por motivos no discriminatorios.

En resumen, para que un empleado de carrera, como en el presente caso, pueda activar una presunción de discrimen político debe demostrar que ha sido despedido sin motivo racional o, en casos en que no haya habido un despido, que se ha tomado alguna acción perjudicial en su contra en el curso del empleo sin justificación racional para ello; y que el demandante es de una clara identificación político partidista. Además de lo anterior, el demandante también tiene el peso inicial de probar, por preponderancia de la prueba, que la conducta protegida fue el factor sustancial o motivante para la acción perjudicial.

II

Sabido es que procede dictar sentencia sumaria si de las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas, si las hubiere, surge que no hay controversia real sustancial en cuanto a ningún hecho material, y como cuestión de derecho debe dictarse sentencia a favor de la parte promovente. Regla 36.3 de Procedimiento Civil, 32 L.P.R.A. Ap. III. R. 36.3.

Al dictar sentencia sumaria el tribunal: (1) analizará los documentos que acompañan la moción solicitando la sentencia sumaria y los documentos incluidos con la moción

en oposición y aquellos que obren en el expediente del tribunal; (2) determinará si el oponente controvirtió algún hecho material o si hay alegaciones de la demanda que no han sido controvertidas o refutadas en forma alguna por los documentos. Véase: Vera Morales v. Bravo Colón, res. el 27 de febrero de 2004, 2004 T.S.P.R. 30; PFZ Props., Inc. v. Gen. Acc. Ins. Co., 136 D.P.R. 881 (1994).

Solicitada sentencia sumaria basada en declaraciones juradas o en documentos admisibles en evidencia, la parte opositora no puede cruzarse de brazos y descansar en las alegaciones si desea derrotar la misma. B.C.R. Co., Inc. v. Tribunal Superior, 100 D.P.R. 754 (1972). Dicha parte tiene que refutar los hechos alegados y sustanciar su posición con prueba consistente en contradeclaraciones juradas y contradocumentos que pongan en controversia los hechos presentados por el promovente. E.L.A. v. Cole Vázquez, res. el 13 de abril de 2005, 2005 T.S.P.R. 46; Rivera v. Superior Packaging, 132 D.P.R. 115 (1992). Si se cruza de brazos corre el riesgo de que le dicten sentencia en su contra sin juicio en su fondo. E.L.A. v. Cole Vázquez, ante; Mercado Vega v. U.P.R., 128 D.P.R. 273 (1991); Cuadrado Lugo v. Santiago, 126 D.P.R 272 (1990).

Al considerar la moción de sentencia sumaria se tendrán como ciertos los hechos no controvertidos que consten en los documentos y las declaraciones juradas presentadas por la parte promovente. Piñero González v. A.A.A., 146 D.P.R. 890 (1998). Cuando, entonces, de los documentos no

controvertidos que se acompañan surge que no existe una legítima disputa de hecho a ser dirimida, que sólo resta aplicar el derecho, y que no se ponen en peligro los intereses de las partes, se dictará sentencia sin necesidad de que se celebre una vista en los méritos. Audiovisual Lang. v. Est. Natal, ante.

Conforme lo expresado, un tribunal puede dictar sentencia sumaria cuando no existan dudas sobre los hechos que no han sido controvertidos y cuando la parte contra la que se presenta no ofrece prueba para controvertirlos.

III

Un análisis de las deposiciones tomadas a los codemandantes, y demás documentos acompañados con la moción de sentencia sumaria, revela que no hay controversia en cuanto a los siguientes hechos: (1) que todos los codemandantes declararon no saber si el Alcalde William Miranda o el Comisionado Alí Laboy, conocían sobre sus respectivas afiliaciones políticas; (2) que, contrario a lo alegado en la demanda, los demandantes no eran "conocidos afiliados" del PNP, ya que éstos declararon específicamente que no participaban activamente en campañas, mítines políticos o actividades del PNP; (3) que las condiciones de trabajo de los policías demandantes eran las mismas que las de otros policías de la Guardia Municipal, y que éstos no pudieron establecer si policías de afiliación política distinta disfrutaban de mejores condiciones de trabajo;

(4) que los policías demandantes <u>no</u> contaban con evidencia sobre cuáles policías con rangos más bajos y menos tiempo de trabajo tenían un sueldo más alto que éstos; (5) que los demandantes <u>no</u> conocían si estos policías que habían recibido aumentos salariales eran afiliados a otro partido; y (6) que los demandantes habían recibido aumentos salariales en años anteriores, coetáneos y posteriores al alegado periodo de discrimen, y que ninguno recibía un salario por debajo de la escala salarial conforme a su puesto.

Los policías <u>no</u> refutaron de forma alguna los anteriores hechos incontrovertidos, alegados por el Municipio. Los policías demandantes <u>no</u> presentaron declaración o documento alguno en su escrito en oposición. En dicho escrito, los codemandantes se limitaron a alegar, de forma escueta, que su acción justificaba preterir el trámite administrativo y que la acción no estaba prescrita por tratarse de un daño continuado.


IV

Es correcto que este Tribunal en casos de discrimen, en los cuales es necesario establecer un elemento intencional --o sea, si la intención del patrono al realizar la alegada acción perjudicial estuvo motivada por un ánimo discriminatorio-- no ha favorecido el uso del mecanismo de

sentencia sumaria. Véase: Soto v. Caribe Hilton, 137 D.P.R. 294 (1994).[11]

Expresamos en este caso, que el uso de sentencia sumaria tiene que ser mesurado y procederá sólo cuando el tribunal quede claramente convencido de que tiene ante sí, de forma no controvertida, todos los hechos materiales pertinentes y de que, por lo tanto, una vista en los méritos resulta innecesaria. Íbid. Pág. 306  En consecuencia, en casos de discrimen sólo procederá se dicte sentencia sumariamente cuando del estudio de todos los documentos presentados surge que no existe controversia alguna sobre hechos esenciales.

Ahora bien, somos del criterio que el presente caso es distinguible del antes citado caso de Soto v. Caribe Hilton,

---

[11] En Soto, ante, se presentó una demanda por discrimen por razón de edad al amparo de la Ley Núm. 100  y de la A.D.E.A. En este caso, el demandante, ante una moción de sentencia sumaria para desestimar su acción, logró activar una presunción por discrimen por razón de edad. Esto es, demostró: (1) que era mayor de 40 años, (2) que estaba capacitado para efectuar su labor, (3) que fue despedido sin justa causa, y (4) que fue sustituido por un empleado más joven. Una vez activada la presunción, el patrono demandado, por su parte, justificó su acción de despido por alegadas repetidas violaciones al reglamento de la compañía. Este Tribunal determinó que el demandante, al presentar documentos, declaraciones juradas y deposiciones logró establecer la existencia de un motivo discriminatorio en las acciones del patrono. Por ello, este Tribunal concluyó que existían controversias de hecho que incidían en aspectos medulares del caso y que ameritaban dilucidarse en una vista en sus méritos. Específicamente, determinamos que el demandante logró establecer controversia sobre la existencia o no de una intención discriminatoria y de si las actuaciones del patrono constituyeron un mero pretexto para encubrir el discrimen. Por ello, revocamos la sentencia dictada por el foro apelativo, la cual, a su vez, confirmaba una sentencia que desestimaba la acción por la vía sumaria.

ante. En el presente caso los policías demandantes <u>no</u> cumplieron con su deber de establecer un caso *prima facie* o una presunción por discrimen. Como <u>claramente</u> se puede apreciar, tanto de las alegaciones de la demanda como de los testimonios prestados por los demandantes en las deposiciones que le fueron tomadas, <u>no</u> surge que los demandantes fueran de una conocida identificación política; tampoco surge algún acto específico realizado, por parte de los demandados, con la intención de discriminar.

La actuación del foro de instancia de desestimar el caso por sentencia sumaria, <u>fue una correcta en derecho en vista de que en la etapa de descubrimiento de prueba ya era evidente que los demandantes no contaban con la evidencia suficiente para establecer un caso *prima facie* de discrimen político. Ausente dicha prueba, la celebración de una vista en los méritos era innecesaria, y por consiguiente, procedía desestimar la acción</u>.

En resumen, este es un caso claro en que no hay controversia de hechos, por lo que estaban presentes las condiciones apropiadas para resolverlo por la vía sumaria. Dicho de otra forma, el foro de instancia tenía ante sí todos los hechos esenciales para hacer la determinación que hizo. La determinación del foro apelativo, al ordenar la celebración de una vista evidenciaria es, por consiguiente, errónea.

En vista de lo anteriormente expuesto, resulta innecesario discutir los errores señalados en cuanto a la

alegada prescripción de la acción y de la jurisdicción primaria de JASAP para atender dicho asunto.[12]

Por los fundamentos antes expresados procede revocar la sentencia emitida en el presente caso por el Tribunal de Apelaciones.

Se dictará Sentencia de conformidad.


FRANCISCO REBOLLO LÓPEZ
Juez Asociado

---

[12] Ello no obstante, reiteramos lo ya resuelto por este Tribunal en cuanto a que en situaciones en las que se reclama al patrono una indemnización por violación de derechos civiles, el empleado público "queda excusado de acudir en primera instancia al foro administrativo para reclamar cualquier responsabilidad civil de dicho patrono". Iguartúa de la Rosa v. Administración del Derecho al Trabajo, S.E., 147 D.P.R. 318 (1998).

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Luis Manuel López Colón,
Migdalia Elsa Benítez
Sánchez y la SLG

    Demandantes-recurridos

        v.               CC-2004-1120     CERTIORARI
                               Cons.
Hon. William Miranda Marín,    CC-2004-1122
su esposa Fulana de Tal y la
SLG; et als

    Demandados-peticionarios

SENTENCIA

San Juan, Puerto Rico, a 16 de diciembre de 2005

    Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se dicta Sentencia revocatoria de emitida por el Tribunal de Apelaciones en el presente caso.

    Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. Los Jueces Asociados señor Fuster Berlingeri y señora Rodríguez Rodríguez concurren en el resultado sin opinión escrita. El Juez Asociado señor Rivera Pérez no intervino.

                    Aida Ileana Oquendo Graulau
                  Secretaria del Tribunal supremo