ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL III- ESPECIAL

| | | |
|---|---|---|
| RANDY S. HERNÁNDEZ ACOSTA<br><br>Apelante<br><br>v.<br><br>ESTADO LIBRE ASOCIADO DE PUERTO RICO Y OTROS<br><br>Apelado | KLAN202400546 | Apelación procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Civil Núm.: SJ2022CV03769<br><br>Sobre: DAÑOS Y PERJUICIOS; VIOLACIÓN DE DERECHOS CIVILES; ACOSO LABORAL |

Panel integrado por su presidente, el Juez Figueroa Cabán, el Juez Bonilla Ortíz, la Jueza Mateu Meléndez y la Jueza Prats Palerm.

**Figueroa Cabán, Juez Ponente**

**SENTENCIA**

En San Juan, Puerto Rico a 30 de agosto de 2024.

Comparece ante nos el señor Randy S. Hernández Acosta, en adelante el apelante o señor Hernández, y solicita que revisemos la *Sentencia Parcial* emitida el 2 de abril de 2024 por el Tribunal de Primera Instancia, Sala de San Juan, en adelante TPI.[1] Mediante dicho dictamen se declaró "Ha Lugar", parcialmente, la *Moción de Sentencia Sumaria* y se desestimaron las causas de acción por alegada violación a la *Ley para Prohibir y Prevenir el Acoso Laboral en Puerto Rico*, en adelante Ley Núm. 90-2020,[2] contra: (1) el Estado Libre Asociado de Puerto Rico, en adelante el Gobierno; (2) el señor Manuel González Azcuy, en adelante el señor González, y (3) la señora Karymel

---

[1] Apéndice del apelante, págs. 383-393.
[2] Ley para Prohibir y Prevenir el Acoso Laboral en Puerto Rico, Ley Núm. 90-2020 (29 LPRA sec. 3111).

Pereira Rodríguez, en adelante la señora Pereira, ambos en su carácter personal; en conjunto los apelados.

Por los fundamentos que expondremos a continuación, se confirma la *Sentencia Parcial* apelada.

-I-

En lo aquí pertinente, el señor Hernández presentó una *Demanda* contra el Gobierno de Puerto Rico, el señor González y la señora Pereira, estos últimos, tanto en su carácter personal como empleados del Negociado de Sistemas de Emergencia 911, en adelante el Negociado. Adujo, en síntesis, haber sido objeto de conducta constitutiva de hostigamiento laboral por parte de sus supervisores durante el tiempo en que ejerció funciones como empleado del Negociado. Alegó ser víctima de gritos, lenguaje soez y hasta amenazas de agresión. Específicamente, le imputó al señor González y a la señora Pereira haber actuado en conjunto en la creación de un ambiente de trabajo hostil y de haberlo sometido a un procedimiento disciplinario "frívolo". A su entender, como resultado de estas conductas, recibió un diagnóstico de depresión y ansiedad. En consideración a lo anterior, alegó que los apelados violentaron la Ley Núm. 90-2020 y su derecho a la dignidad e intimidad protegidos por la Constitución de Puerto Rico.[3]

En la *Contestación a Demanda* los apelados negaron haber incurrido en cualquier tipo de conducta ilegal o

_____

[3] *Id.*, págs. 1-8.

de acoso.[4] Por el contrario, adujeron que los trámites llevados a cabo en el Negociado respondieron a medidas disciplinarias justificadas y que todo se realizó dentro de sus capacidades oficiales, por lo que no procedía la causa de acción en su carácter personal. Además, arguyeron, que el apelante "incumplió su obligación de mitigar los daños" porque nunca notificó la situación o agotó ningún trámite administrativo. Sostuvieron, además, que "no existe relación causal entre las acciones llevadas a cabo por la parte compareciente [los apelados] y los daños alegadamente sufridos".

Finalizado el descubrimiento de prueba, los apelados presentaron una *Moción de Sentencia Sumaria* en la que plantearon, qué conforme a los hechos no controvertidos, el apelante no cumplió con los requisitos de la causa de acción bajo la Ley Núm. 90-2020.[5] Alegaron, además, que los hechos demuestran que las actuaciones del Negociado estuvieron justificadas y que los apelados no respondían en su carácter personal debido a que actuaron en el marco de sus funciones oficiales. Finalmente, insistieron en que el señor Hernández "intencionalmente, obvió dar conocimiento de la situación a la agencia, lo que pudo haber corregido el supuesto ambiente hostil".

Por su parte, el apelante presentó su *Oposición a Solicitud de Sentencia Sumaria,*[6] en la que argumentó que el caso no era susceptible de resolverse mediante sentencia sumaria. Específicamente sostuvo, entre otras alegaciones, que los hechos presuntamente no

---

[4] *Id.,* págs. 9-87.
[5] *Id.,* págs. 125-363.
[6] *Id.,* págs. 364-381.

controvertidos, son "meras interpretaciones" de una prueba documental "de la que se estipuló su autenticidad, pero no así su contenido". Destacó también, que el patrón de hostigamiento comenzó con un referido en el que se sacó de proporción su respuesta a una persona que se comunicó al Negociado para solicitar ayuda. Arguyó, además, que los apelados no controvirtieron ni refutaron que la señora Pereira se reunió a solas con el apelante y le "entregó un documento nuevo con una medida por mal manejo de la misma llamada, pero con señalamientos diferentes a los planteados en el documento original".

Evaluadas las posiciones de las partes, el TPI dictó *Sentencia Parcial* en la que declaró "Ha Lugar", parcialmente, la *Moción de Sentencia Sumaria*, desestimando las causas de acción por violación a la Ley Núm. 90-2020, esgrimidas contra (1) el Gobierno (2) el señor González, en su carácter personal y (3) la señora Pereira, en su carácter personal.[7]

En lo aquí pertinente el foro apelado consideró que los siguientes hechos no están en controversia:

[…]

7. La medida disciplinaria impuesta al demandante fue una amonestación escrita.

8. Mediante carta de 22 de junio de 2021, se le informó al Sr. Hernández Acosta que su contrato de empleado transitorio no le sería renovado.

[…]

10. Como parte de su entrenamiento, el demandante fue instruido a ser empático con las personas que llaman y que en los casos en los que no se trata de una emergencia, indicarle a la persona que llama las razones por las que se dispone de su llamada en una manera diferente a una emergencia, "cordialidad y empatía hacia la persona que está llamando".

[…]

---

[7] *Id.*

15. El Negociado del Sistema de Emergencias cuenta con un protocolo para la atención de llamada y transferencia de llamadas a las diferentes agencias que atienden emergencias en la jurisdicción de Puerto Rico. En específico, el protocolo indica que si la situación que está siendo reportada, no compromete vidas ni propiedad o no constituye una emergencia real, se debe brindar al cliente amablemente el número telefónico del cuartel de la policía correspondiente a la localización de los hechos.

16. El Negociado del Sistema de Emergencias cuenta con un protocolo mediante el cual se establece un proceso de evaluación del manejo de llamadas atendidas en los Centros de Recepción de Llamadas, con el propósito de medir la calidad en el manejo de llamadas de emergencia que atienden los telecomunicadores, con el fin de identificar situaciones que se desvíen del protocolo de atención de llamadas y afecten adversamente el servicio.

17. El 15 de junio de 2018, el demandante recibió una carta por parte de la Supervisora en la Oficina de Control de Calidad. La comunicación llevaba el propósito de orientarle en cuanto a errores que el demandante cometió en la atención de una llamada que ocurrió el 28 de mayo de 2018.

18. El 11 de septiembre de 2018, el demandante fue evaluado por la Oficina de Control de Calidad con respecto a una llamada en la que no mostró cortesía o empatía con el ciudadano. Su intervención en la llamada fue calificada como inaceptable.

19. El 10 de marzo de 2019, el demandante recibió una amonestación por parte de su supervisora, Sra. Santiago García, como consecuencia de haber utilizado palabras soeces durante una llamada y no haber completado el proceso de la llamada conforme a las normas del Negociado.

[…]

21. El 20 de noviembre de 2019, la Oficina de Control de Calidad evaluó una llamada atendida por el demandante y determinó que la llamada había sido atendida de manera deficiente. En cuanto a la llamada, el demandante la clasificó como una llamada que no implicaba una emergencia, aunque los protocolos establecían una acción diferente.

22. En el mes de febrero de 2020, la Directora del Centro de Llamadas del Negociado hizo un referido a la Oficina de Recursos Humanos para que se evaluara la imposición de medidas disciplinarias al demandante, como consecuencia de que se le descubriera utilizando palabras soeces en las llamadas que atendía, así como un trato hostil hacia los ciudadanos.

[…]

25. El 12 de enero de 2021, el Sr. Delgado-Delgado, hizo un referido a Recursos Humanos para que se evaluara si procedía imponer medidas

disciplinarias al demandante como consecuencia de no haber atendido adecuadamente una llamada. El demandante hizo una anotación en la notificación indicando que no podía atender la llamada porque la ciudadana no le indicó cual [*sic.*] era la emergencia.

[…]

27. Mediante carta de 1 de marzo de 2021, se le notificó al demandante una carta de intención de medida disciplinaria consistente en la suspensión de empleo y sueldo por un término de treinta (30) días.

[…]

30. El demandante tuvo oportunidad de presentar su versión de los hechos durante el transcurso de la vista. Entre otras cosas, su testimonio se limitó a indicar que sus niveles de tolerancia han sido bajos como consecuencia de María, los temblores y la pandemia; que la carta entregada por el gerente le imputaba sanciones diferentes a las discutidas durante la vista y dio su versión de los hechos. El demandante no expresó tener problemas con sus supervisores o haber sido víctima de un patrón de hostigamiento laboral como parte de su testimonio.

31. El demandante nunca presentó una querella en contra de los codemandados o le notificó a la agencia del alegado hostigamiento laboral que sufría.

32. El 13 de abril de 2021, el Oficial Examinador emitió un informe en el que recomendó que se le impusiera al demandante la sanción de una reprimenda escrita, como consecuencia de su incumplimiento de sus responsabilidades como Telecomunicador I.

[…]

34. El demandante recibió una evaluación de desempeño que comprendía el periodo entre julio de 2020, hasta diciembre de 2020, la cual se les hacía a los empleados transitorios. Dicha evaluación se llevó a cabo por la codemandada, la Sra. Santiago García.

35. La medida disciplinaria impuesta al demandante fue una amonestación escrita.[8]

Cónsono con lo anterior, el TPI coligió que las amonestaciones y sanciones fueron impuestas conforme a la potestad de los supervisores sobre sus subalternos y de velar por el cumplimiento de los reglamentos; que las sanciones se debieron a desviaciones de los protocolos, en tanto el apelante no desempeñó sus

---

[8] *Id*., págs. 386-389.

funciones como telecomunicador con cortesía ni empatía; y que "se le dio una notificación escrita con la intención de medida disciplinaria, se celebró la vista informal relacionada a la carta de intención de suspensión de empleo y sueldo, tuvo oportunidad de presentar su versión de los hechos y se le dio el debido proceso de ley antes de sancionarle".[9] De igual forma, razonó, que "independientemente existiera el protocolo o no que requiere la Ley 90, el demandante nunca expresó o notificó al patrono tener problemas con sus supervisores o haber sido víctima de un patrón de hostigamiento laboral". En cuanto al señor González y la señora Pereira, concluyó que las determinaciones de hechos no demostraron que sus actuaciones se extralimitaron de sus responsabilidades, ni sostienen una causa de acción en su carácter personal.

Inconforme, el apelante presentó una *Solicitud de Reconsideración de Sentencia Parcial,*[10] que el TPI declaró "No Ha Lugar"[11].

Aún inconforme, el señor Hernández acudió ante nosotros mediante el recurso de epígrafe en el que señaló que el TPI cometió el siguiente error:

> Erró el TPI al desestimar la causa de acción del demandante al amparo de la Ley 90-2020, a pesar de la existencia de alegaciones afirmativas en la demanda sobre hechos esenciales de esta reclamación que no fueron refutadas por los codemandados.

Luego de revisar los escritos de las partes y los documentos que obran en autos estamos en posición de resolver.

---

[9] *Id.*, pág. 392.
[10] *Id.*, págs. 394-400.
[11] *Id.*, págs. 402-403.

## -II-

### A.

La sentencia sumaria es un mecanismo procesal extraordinario y discrecional, que tiene el propósito de facilitar la solución justa y rápida de los litigios y casos civiles que no presenten controversias genuinas de hechos materiales y que, por lo tanto, no ameritan la celebración de una vista en su fondo.[12] Se trata de un mecanismo para aligerar la tramitación de un caso, cuando de los documentos que acompañan la solicitud surge que no existe disputa sobre algún hecho material y lo que procede es la aplicación del derecho.[13] Este mecanismo procesal solo procede en casos donde "el Tribunal tenga ante sí la verdad sobre todos los hechos pertinentes".[14] De existir la mínima duda sobre si un hecho esencial esta controvertido, el Tribunal debe de proceder a denegar la moción de sentencia sumaria y celebrar un juicio en su fondo.[15]

Al respecto, la Regla 36.1 de Procedimiento Civil dispone que un reclamante debe "presentar una moción fundada en declaraciones juradas o en aquella evidencia que demuestre la inexistencia de una controversia sustancial de hechos esenciales y pertinentes, para que el tribunal dicte sentencia

---

[12] *Aponte Valentín v. Pfizer Pharmaceuticals, LLC*, 208 DPR 263, 277-279 (2021); *Meléndez González, et als. v. M. Cuebas*, 193 DPR 100, 110-113 (2015); *Reyes Sánchez v. Eaton Electrical*, 189 DPR 586, 594 (2013); *Ramos Pérez v. Univisión de PR*, 178 DPR 200, 213 (2010); *ELA v. Cole Vazquez*, 164 DPR 608 (2005).
[13] *Aponte Valentín v. Pfizer Pharmaceuticals, LLC, supra; Meléndez González, et als. v. M. Cuebas, supra; Ramos Pérez v. Univisión de P.R., supra*, pág. 214.
[14] *Corp. Presiding Bischop CJC of LDS v. Purcell*, 117 DPR 714, 720-721 (1986).
[15] *ELA v. Cole Vázquez, supra; López Colón v. Hon. Miranda Marín*, 166 DPR 546 (2005)

sumariamente a su favor sobre la totalidad o cualquier parte de la reclamación solicitada".[16]

El Tribunal Supremo de Puerto Rico, en adelante TSPR, ha declarado enfáticamente que quien se opone a una solicitud de sentencia sumaria tiene que ceñirse a ciertas exigencias en lo atinente a los hechos.[17] Esto es, recae sobre el oponente la obligación de citar específicamente los párrafos, según enumerados en el escrito de sentencia sumaria, que entiende están en controversia, y para cada uno, detallar la evidencia admisible que fundamenta su alegación, y especificar la página o sección de la evidencia que contradice o refuta el hecho.[18] Además, el oponente puede someter hechos materiales adicionales que alegadamente no están en controversia y que impiden la solución sumaria del conflicto.[19] De así hacerlo, tiene la responsabilidad de, al igual que el proponente, enumerar los hechos en párrafos separados e indicar la pieza de evidencia que sostiene el hecho, con referencia específica a la parte de la evidencia que lo apoya.[20]

Así pues:

La parte que se opone a una Moción de Sentencia Sumaria tiene el deber de presentar una Oposición a la solicitud presentada y de acuerdo con los requisitos de forma que exige la citada Regla 36 de Procedimiento Civil, traer a la atención del Tribunal la evidencia que demuestra que existen hechos materiales en controversia.[21]

Cónsono con lo anterior:

[L]a parte contraria no podrá descansar solamente en las aseveraciones o negaciones contenidas en

---

[16] Regla 36.1 de Procedimiento Civil de 2009 (32 LPRA Ap. V).
[17] *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 432 (2013).
[18] *Id.*; Regla 36.3(b)(2) de Procedimiento Civil de 2009 (32 LPRA Ap. V).
[19] *SLG Zapata-Rivera v. J.F. Montalvo*, *supra*.
[20] *Id.*; Regla 36.3 (b)(3) de Procedimiento Civil de 2009 (32 LPRA Ap. V).
[21] *Meléndez González, et als. v. M. Cuebas*, *supra*, pág. 122.

sus alegaciones, sino que estará obligada a contestar en forma tan detallada y específica, como lo haya hecho la parte promovente. [De lo contrario], se dictará la sentencia sumaria en su contra si procede.[22]

Sin embargo, "la omisión en presentar evidencia que rebata aquella presentada por el promovente, no necesariamente implica que procede dictar sentencia sumaria de forma automática".[23]

**B.**

El Artículo 2 de la Constitución del Estado Libre Asociado de Puerto Rico reconoce "la inherente desigualdad que caracteriza la relación obrero-patronal, donde el patrono, por su capacidad económica, posee mayor poder que el trabajador individual que necesita de su empleo para sobrevivir".[24] Por esta razón, las cuestiones relacionadas a aspectos sobre la relación obrero-patronal gozan de rango constitucional, orientando así nuestro ordenamiento laboral a la protección del empleo, la salud y seguridad de los trabajadores y a evitar las prácticas injustas del trabajo.[25]

De conformidad con nuestra Constitución, se aprobó la Ley Núm. 90-2020 para establecer "una vigorosa política pública contra todo tipo de acoso en el entorno laboral que afecte el desempeño del trabajador, altere la paz industrial y atente contra la dignidad de los trabajadores;"[26] sin importar la categoría, jerarquía, clasificación ni la duración del

---

[22] Regla 36.3 (c) de Procedimiento Civil de 2009 (32 LPRA Ap. V).
[23] *Córdova Dexter v. Sucn. Ferraiuoli, supra.*
[24] *Rivera Figueroa v. The Fuller Brush Co.*, 180 DPR 894, 901-904 (2011).
[25] *Rivera Figueroa v. The Fuller Brush Co., supra; Orsini García v. Srio. De Hacienda*, 177 DPR 596, 618 (2009); *Rivera v. Pan Pepín*, 161 DPR 681,688 (2004); *Diaz v. Wyndham Hotel Corp.*, 155 DPR 364, 374 (2001).
[26] Art. 2 de la Ley Núm. 90-2020 (29 LPRA sec. 3112).

empleo.[27] A estos efectos, la Rama Legislativa define acoso laboral como:

> "[…] aquella conducta malintencionada, no deseada, repetitiva y abusiva; arbitraria, irrazonable y/o caprichosa; verbal, escrita y/o física; de forma reiterada por parte del patrono, sus agentes, supervisores o empleados, ajena a los legítimos intereses de la empresa del patrono, no deseada por la persona, que atenta contra sus derechos constitucionales protegidos, tales como: la inviolabilidad de la dignidad de la persona, la protección contra ataques abusivos a su honra, su reputación y su vida privada o familiar, y la protección del trabajo contra riesgos para su salud o integridad personal en su trabajo o empleo. Esta conducta de acoso laboral crea un entorno de trabajo intimidante, humillante, hostil u ofensivo, no apto para que la persona razonable pueda ejecutar sus funciones o tareas de forma normal."[28]

Así pues, el patrono que incurra, fomente o permita el acoso laboral responderá frente a las personas afectadas. Será además responsable por las actuaciones que constituyan acoso laboral por parte del personal a su cargo u otros empleados, cuando este, sus agentes o supervisores, sabían o debían conocer sobre dichas conductas. Es responsabilidad del patrono tomar las medidas necesarias para eliminar o reducir al mínimo las ocurrencias de acoso laboral.[29]

Ahora bien, la determinación sobre si una conducta constituye acoso laboral o no "dependerá de la totalidad de las circunstancias y los hechos probados."[30] De modo que, sin ser exhaustivo, el legislador considera como acoso laboral las siguientes conductas:

(1) Las expresiones injuriosas, difamatorias o lesivas sobre la persona, con utilización de palabras soeces.

(2) Los comentarios hostiles y humillantes de descalificación profesional expresados en presencia de los compañeros de trabajo.

---

[27] 29 LPRA sec. 3113.
[28] 29 LPRA sec. 3114.
[29] 29 LPRA sec. 3115.
[30] 29 LPRA sec. 3118.

(3)    Las injustificadas amenazas de despido expresadas en presencia de los compañeros de trabajo.

(4)    Las múltiples denuncias disciplinarias de cualquier de los sujetos activos del acoso, cuya temeridad quede demostrada por el resultado de los respectivos procesos disciplinarios.

(5)    La descalificación humillante sobre propuestas u opiniones del trabajo.

(6)    Los comentarios o burlas dirigidos al empleado sobre la apariencia física o la forma de vestir, formuladas en público.

(7)    La alusión pública a hechos pertenecientes a la intimidad personal y familiar del empleado afectado.

(8)    La imposición de deberes patentemente extraños a las obligaciones laborales, las exigencias abiertamente desproporcionadas sobre el cumplimiento de la labor encomendada y el brusco cambio del lugar de trabajo o de la labor contratada sin ningún fundamento objetivo referente al negocio o servicio a que se dedica el patrono.[31]

(9)    La negativa del patrono u otros empleados a proveer materiales e información de naturaleza pertinente e indispensable para el cumplimiento de labores.

En cambio, también sin ser exhaustivo, el legislador considera que los siguientes actos no constituyen acoso laboral:

(1)    Actos destinados a ejercer la potestad disciplinaria que legalmente corresponde a los supervisores sobre sus subalternos.

(2)    La formulación de exigencias para protección de la confidencialidad en los servicios a los que se dedica el patrono o la lealtad del empleado a su patrono.

(3)    La formulación o promulgación de reglamentos o memorandos para encaminar la operación, maximizar la eficiencia y la evaluación laboral de los empleados en razón a los objetivos generales del patrono.

(4)    La solicitud de cumplir deberes adicionales de colaboración cuando sea necesario para la continuidad del servicio o para solucionar situaciones difíciles en la operación y servicios que ofrece el patrono.

(5)    Las acciones administrativas dirigidas a la culminación de un contrato de trabajo, con justa causa o por periodo fijo de tiempo, previsto en el ordenamiento jurídico de Puerto Rico.

(6)    Las acciones afirmativas del patrono para hacer cumplir las estipulaciones contenidas en los reglamentos de administración de recursos

---

[31] 29 LPRA sec. 3118.

humanos o de cláusulas de los contratos de trabajo.

(7) Las acciones afirmativas del patrono para que se cumplan con las obligaciones, deberes y prohibiciones que rigen por ley.[32]

En armonía con la intención legislativa, es obligatorio que todo patrono, público o privado, "exponga su contenido [Ley Núm. 90-2020] en un lugar visible para todos sus empleados y [a] orientarlos sobre las medidas, políticas y procesos adoptados en el lugar de trabajo". Además, los patronos deben crear unas guías uniformes dentro de un plazo no mayor de 180 días, a partir de su vigencia, para la implementación de protocolos que se deben de adoptar sobre el manejo de querellas relacionadas a acoso laboral. También dicho ordenamiento establece un segundo plazo de 180 días, a partir de la publicación de las guías uniformes, para la adopción e implementación de los protocolos y la debida difusión de las mencionadas guías en los centros de trabajo.[33]

Finalmente es necesario destacar, que es responsabilidad de la persona que alegue ser víctima de acoso laboral, comunicarlo, siguiendo el procedimiento y el protocolo adoptado por su patrono.[34]

**-III-**

En esencia, el apelante arguye que en la *Demanda* existen alegaciones materiales que sostienen una causa de acción de acoso al amparo de la Ley Núm. 90-2020 que no fueron refutadas por los apelados en su solicitud de sentencia sumaria. Además, el patrono incumplió con la Ley Núm. 90-2020 al no adoptar, ni implantar, las políticas necesarias para prevenir,

---

[32] 29 LPRA sec. 3118.
[33] 29 LPRA sec. 3119.
[34] 29 LPRA sec. 3120.

desalentar y evitar el acoso laboral en el centro de trabajo. Por esta razón aduce que no tenía que agotar el procedimiento administrativo. En su opinión, exigir lo contrario "sería incongruente con el propósito de la ley de proveer una causa de acción para impedir el acoso laboral y ser vindicadas por los daños sufridos a consecuencia de ello".

En cambio, los apelados alegan que no existe controversia real ni sustancial, en cuanto a los hechos materiales pertinentes. Aducen que, en su réplica, el señor Hernández no se opuso a la *Moción de Sentencia Sumaria* conforme a la Regla 36(b) de Procedimiento Civil. Sostienen, además, que contrario a lo intimado por el apelante, el foro apelado tomó en consideración las alegaciones 12, 15 y 16 de la *Demanda*, al punto que mantiene en el pleito a dos funcionarios a los cuales se les imputa la conducta de acoso laboral. Sin embargo, en su opinión, esas alegaciones son inconsecuentes en cuanto al Gobierno y a los dos funcionarios cuya causa de acción personal fue correctamente desestimada.

Luego de revisar *de novo* el expediente, concluimos que la *Moción de Sentencia Sumaria* satisface cabalmente los requisitos de la Regla 36.3(a) de Procedimiento Civil. Así pues, incluye una exposición breve de las alegaciones de las partes, de los asuntos en controversia y de la causa de acción sobre la cual se solicita la sentencia sumaria. Además, contiene una relación concisa y organizada, en párrafos enumerados, de los hechos esenciales sobre los cuales no hay controversia con las citas de las deposiciones y de los documentos admisibles en

evidencia en los cuales apoya su contención. Finalmente, la solicitud de despacho sumario de los apelados expone las razones por las cuales se debe de dictar sentencia sumaria y el remedio solicitado. [35]

En cambio, la *Oposición a Solicitud de Sentencia Sumaria* no cumple con la Regla 36(a)(1)-(3), ni con el inciso (b)(2) y (4) de dicha norma procesal. Tampoco satisfizo las disposiciones de la Regla 36.2(c), en la medida en que se basó estrictamente en las aseveraciones formuladas en sus alegaciones, tales como: que los hechos presentados como no controvertidos por los apelados son meras interpretaciones porque no se estipuló el contenido de la prueba documental;[36] que contrario a lo que alegan los apelados, en la llamada telefónica a partir de la cual se desarrolló el patrón de hostigamiento, el señor Hernández no puso en riesgo la vida o seguridad de otros;[37] que el patrono incumplió con la Ley Núm. 90-2020 porque nunca implementó las medidas de divulgación, razón por la cual el apelante no estaba obligado a agotar un procedimiento administrativo inexistente;[38] y que las alegaciones en la *Demanda*, íntimamente relacionadas con la conducta de hostigamiento laboral, no fueron controvertidas ni refutadas por los apelados[39]. En síntesis, y contrario al mandato legislativo y jurisprudencial de la Regla 36 de Procedimiento Civil, el señor Hernández pretendió oponerse a la *Moción de Sentencia Sumaria* basándose exclusivamente en las alegaciones 15, 16 y

---

[35] Apéndice del apelante, págs. 125-163.
[36] *Id.*, pág. 1334.
[37] *Id.,* pág. 375.
[38] *Id.*
[39] *Id.*, pág. 376.

27-29 de su propia *Demanda*. Alegaciones conclusorias y acomodaticias desprovistas de apoyo fundamentado en evidencia admisible.

Ahora bien, de acuerdo con el estándar de revisión aplicable, como el apelante no se opuso a la *Moción de Sentencia Sumaria* conforme a la Regla 36, las 37 determinaciones de hechos propuestas por los apelados se consideran incontrovertidas. Consecuentemente, corresponde revisar si el TPI aplicó correctamente el derecho y anticipamos que sí lo hizo. Veamos.

En primer lugar, conforme a la Ley Núm. 90-2020, la conducta de los apelados no es ajena a los legítimos intereses del patrono.[40] Por el contrario, de los hechos incontrovertidos previamente expuestos se desprende, inequívocamente, que el propósito de los apelados era asegurarse de la calidad de las llamadas del Negociado y del servicio que se le brindaba al público. Así pues, la prueba no refutada refleja las frecuentes y graves violaciones del protocolo de llamadas del Negociado por parte del señor Hernández y de las medidas disciplinarias que le fueron impuestas como consecuencia de lo anterior. A la luz de lo anterior, si tomamos en consideración que el apelante era un empleado transitorio, las múltiples violaciones a los parámetros de servicio del Negociado justificaban la terminación del contrato.

En segundo lugar, los hechos incontrovertidos también permiten concluir que el trámite disciplinario conducido contra el apelante estuvo estrictamente basado en el incumplimiento con las labores de su

---

[40] Art. 4(3) de la Ley Núm. 90-2020 (29 LPRA sec. 3114).

cargo y no con conducta constitutiva de acoso laboral.[41] Por el contrario, su accidentado expediente laboral refleja la frecuente inobservancia del señor Hernández con sus responsabilidades como Telecomunicador I del Negociado.

En síntesis, de la revisión integrada de la *Moción de Sentencia Sumaria*, de su oposición y de los documentos que obran en autos no se puede concluir que los apelados hayan incurrido en conducta constitutiva de acoso laboral.[42]

Finalmente, si asumimos *in arguendo* que los apelados incurrieron en acoso laboral, el señor Hernández nunca notificó de ello a su patrono.[43]

**-IV-**

Por los fundamentos previamente expuestos, se confirma la *Sentencia Parcial apelada.*

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[41] Apéndice del apelante, págs. 386-389 (Determinaciones de Hechos que no Están en Controversia: 7, 10, 17, 18, 19, 21, 22, 25, 27, 32 y 35).
[42] 29 LPRA sec. 3114.
[43] Apéndice del apelante, pág. 388 (Determinación de hecho incontrovertido 30).