| | | |
|---|---|---|
| ESTADO LIBRE ASOCIADO DE PUERTO RICO TRIBUNAL DE APELACIONES PANEL IV | | |
| HÉCTOR IBAÑEZ HERNÁNDEZ Parte Recurrente v. ADMINISTRACIÓN DE COMPENSACIONES POR ACCIDENTES DE AUTOMÓVILES Parte Recurrida | KLRA202300496 | *Revisión de Decisición Administrativa* procedente de la Oficina del Juez Administrativo de la Administración de Compensaciones por Accidentes de Automóviles (ACAA) Caso Núm.: NV-2022-002 Sobre: Impugnación Convocatoria |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, la Jueza Rivera Marchand y el Juez Rodríguez Flores.

Rodríguez Flores, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 30 de enero de 2024.

Comparece el recurrente, Sr. Héctor Ibáñez Hernández (en adelante Ibáñez), mediante el recurso de revisión administrativa del epígrafe. En este, nos solicita la revocación de una determinación notificada por la Oficina de la Jueza Administrativa de la Administración de Compensaciones por Accidentes de Automóviles (en adelante ACAA), mediante la cual se desestimó su impugnación al proceso de selección para el puesto de Ayudante del Director de la Oficina Regional de Aguadilla llevado a cabo por la ACAA. Por los fundamentos expuestos a continuación, confirmamos la determinación recurrida.

I.

Según se desprende del expediente, la agencia publicó la Convocatoria 22G-03 para el puesto de Ayudante de Director en la Oficina Regional de Aguadilla de ACAA. Interesado en el mismo, Ibáñez presentó su solicitud de empleo para dicha convocatoria y, tras ser evaluado mediante examen su preparación académica, adiestramientos y experiencia de trabajo, se le otorgó diez puntos adicionales por su calificación de veterano, para un total de 108.94 puntos. Dado que dicha puntuación lo ubicó en el tope de la lista de candidatos elegibles, se le citó para entrevista pautada el 20 de octubre de 2022.

Para evaluar a los candidatos elegibles, entre los cuales se encontraba Ibáñez, el Comité de Preselección de Candidatos designado por el Director Ejecutivo de la agencia utilizó un examen compuesto de nueve (9) preguntas que midieron conocimientos, aptitudes y razonamiento analítico. Las respuestas a los exámenes fueron evaluadas y calificadas de manera independiente por los tres evaluadores. Como resultado de ese proceso, Ibáñez obtuvo 87 puntos, mientras que la señora Colón Pérez obtuvo 108 puntos, la cual la colocó en la primera posición entre todos los aspirantes. De tal manera, el Comité de Preselección de Candidatos sometió los resultados al Director y este le notificó el 17 de noviembre de 2022 a Ibáñez que no resultó seleccionado para el puesto en cuestión.

En desacuerdo, el 5 de diciembre de 2022, Ibáñez presentó una apelación ante la oficina del juez administrativo de la ACAA impugnando la selección y el nombramiento. Alegó que se incumplió con las secciones 9.2, 9.3 y 9.5 del Reglamento de Personal para los Empleados Gerenciales, en violación al principio de mérito. También adujo discrimen político y violación a la Carta de Derechos del Veterano Puertorriqueño del Siglo XX1. Solicitó que se deje sin efecto la designación de la Sra. Colón Pérez para el puesto para conferírselo

a él, por ser el candidato más idóneo. Para sustentar la alegación de discrimen, adujo que el Comité de Preselección de Candidatos para la convocatoria estuvo compuesto por personas afines políticamente con la administración actual, lo que tuvo el efecto de que se discriminara políticamente contra aquellos aspirantes que no comparten la misma afiliación política. Añadió que él cumple con todos los requisitos mínimos del puesto, que incluye una preparación académica y experiencia laboral superior a la del resto de los aspirantes. Además, asume que la puntuación adicional que debió haber recibido como veterano lo colocó en una posición superior al candidato seleccionado. El 3 de abril de 2023, Ibáñez enmendó la apelación para incluir la información del candidato seleccionado en la convocatoria y evidencia de su derecho a comparecer como parte interventora del caso.

La ACAA contestó la apelación enmendada el 5 de abril de 2023 y se realizó descubrimiento de prueba.

Así las cosas, el 24 de mayo de 2023, la ACAA presentó Moción Solicitando Resolución Sumaria del Caso en la que solicitó la desestimación de la apelación. En la moción, propuso 17 hechos incontrovertidos y presentó sus planteamientos de derecho. En primer lugar, arguyó que cualquier impugnación en cuanto a la puntuación obtenida, se presentó fuera de término ya que la carta del 19 de octubre de 2022, en la cual se le informó su puntuación obtenida en el examen de convocatoria, expresamente advirtió que contaba con 15 días para solicitar la revisión de la puntuación, término dentro del cual Ibáñez no presentó escrito alguno. En segundo lugar, adujo que Ibáñez obtuvo una puntuación de 98.94, la cual, luego de acreditado los 10 puntos de preferencia por veterano, reflejó una puntuación total de 108.94, que lo colocó en el primer lugar del Registro de Elegibles. No obstante, el aspirante elegido lo superó en la fase de entrevista.

Por otro lado, la ACAA indicó que la participación del Comité de Preselección de Candidatos fue conforme al Reglamento de Personal y arguyó que Ibáñez no demostró que el procedimiento llevado a cabo hubiera afectado sus derechos. Asimismo, sostuvo que Ibáñez no presentó los elementos esenciales de una reclamación de discrimen político. Por último, adujo que el proceso y selección se hizo conforme a derecho y planteó que Ibáñez no rebatió la presunción de legalidad y corrección de las decisiones administrativas.

El 4 de julio de 2023, Ibáñez presentó Oposición a Moción Solicitando Resolución Sumaria del Caso. Reiteró que la selección de otro candidato fue arbitraria, caprichosa, discriminatoria y ajena al principio de mérito, y que él es el candidato idóneo para ocupar el puesto. Aseguró que el caso presenta elementos subjetivos no susceptibles de adjudicarse por la vía sumaria. Afirma que como la ACAA acompañó a su solicitud las hojas de entrevista de los candidatos y las puntuaciones, él tiene derecho a interrogar a los entrevistadores sobre ese aspecto.

El 28 de agosto de 2023, la Jueza Administrativa de la ACAA dictó la Resolución recurrida, en la cual esbozó los siguientes 14 hechos incontrovertidos:

1) El 3 de agosto de 202[2], la ACAA publicó la Convocatoria Gerencial Núm. 22G-03 para el puesto de Ayudante de Director de Oficina Regional de Aguadilla.

2) Como requisito mínimo, la convocatoria para el puesto de Ayudante de Director de la Oficina Regional de Aguadilla pedía un bachillerato en un colegio o universidad acreditada y dos (2) años de experiencia administrativa, que incluyera funciones relacionadas con la supervisión y coordinación de asuntos administrativos. Además, aclaraba que un grado de maestría en Administración Pública o Gobierno y Política Pública podía convalidar los años de experiencia administrativa.

3) El apelante presentó su Solicitud de Empleo para la convocatoria 22G-03, y luego de la evaluación de la misma, se le adjudicó una puntuación de 108.94 en su examen de convocatoria, la cual se desglosa de la siguiente manera: (i) 70 puntos por cumplir con los requisitos mínimos de la convocatoria, (ii) 18.94 puntos por experiencia adicional, (iii) 10 puntos por poseer una maestría (preparación académica adicional a la

requerida), y (iv) 10 puntos adicionales de preferencia por presentar la evidencia de veterano (Forma 214).

4) El 19 de octubre de 2022 la ACAA le notificó al Apelante sobre la puntuación obtenida en su examen de convocatoria, y le apercibió que de no estar de acuerdo con dicha puntuación tendría un término de quince (15) días para revisar la calificación obtenida.

5) En la referida comunicación el Apelante fue citado por la ACAA para una entrevista el 20 de octubre de 2022, a las 10:30 a.m.

6) La certificación de elegibles para la convocatoria estuvo compuesta por los siguientes candidatos: (1) Héctor Ibáñez, puntuación 108.94; (2) Jéssica Colón Pérez, puntuación 98.94; (3) Armando Rodríguez Santoni, puntuación 98.94; y (4) Idermis Martínez Martínez, puntuación 83.53.

7) De conformidad con las facultades delegadas, y en atención a las disposiciones del Reglamento de Personal, el Director Ejecutivo, Noé Marcano Rivera, designó un Comité de Entrevistas para evaluar a los candidatos que reunieran los requisitos mínimos del puesto, integrado por los siguientes funcionarios: (i) Lcda. Shakira Santiago Rodríguez, Subdirectora de Relaciones Laborales; (2) Lcdo. Alberto Marini Delgado, Director de Asuntos Legales, y (iii) Ramón L. Figueroa González, Director de Departamento de Recursos Humanos y Relaciones Laborales.

8) El 20 de octubre de 2022, el Apelante fue entrevistado por el Comité de Entrevistas para cubrir el puesto de Ayudante de Director en Oficina Regional de Aguadilla y obtuvo una puntuación total de 87 puntos en tal proceso.

9) El 20 de octubre de 2022, la candidata seleccionada para ocupar el puesto de la convocatoria en cuestión, Sra. Jessica Colón Pérez, fue entrevistada por el comité de Entrevistas y obtuvo una puntuación total de 108 puntos en tal proceso.

10) Mediante el proceso de entrevista de selección, el objetivo fue evaluar, a través de nueve (9) preguntas, el conocimiento general de trabajo, destrezas, habilidades y conocimientos especiales, experiencias generales y específicas, así como preparación académica. Las respuestas a tales preguntas fueron evaluadas por cada miembro del Comité dentro de la escala establecida 0 a 4.

11) Además, en el proceso se evaluaron otros aspectos, tales como puntualidad, vestimenta, proyección y dominio del tema.

12) El 24 de octubre de 2022 el Comité emitió una Recomendación de Selección de Candidato Convocatoria Núm. 22G-03 al Director Ejecutivo, indicando que los candidatos calificados a base de capacidad e idoneidad para desempeñar las funciones del puesto de Ayudante de Director de la Oficina Regional de Aguadilla eran los siguientes:

A) Idermis Martínez Martínez
B) Jessica Colón Pérez
C) Héctor Ibáñez Hernández
D) Armando Rodríguez Santoni

13) El 25 de octubre de 2022, el Director Ejecutivo seleccionó a la candidata Jessica Colón Pérez para el puesto de la convocatoria 22G-03.

14) La ACAA notificó al Apelante que fue considerado, pero no seleccionado para el puesto de Subdirector Regional Oficina Regional de San Juan [Sic].[1]

Luego, la Jueza Administrativa delimitó las siguientes controversias: (1) determinar si la ACAA cumplió con el Reglamento de Personal y el principio de mérito durante el proceso de reclutamiento y selección para la convocatoria, (2) determinar si hubo algún tipo de discrimen político en contra de Ibáñez y (3) si la ACAA incumplió con las disposiciones de la Ley 203 del 2007 con relación a la preferencia de veterano.

La Jueza Administrativa aclaró que mediante la Resolución 2020-mayo-7A, la Sección 9.5 del Reglamento de Personal fue enmendada a los efectos de establecer un comité de tres (3) o más miembros mediante designación del Director Ejecutivo de la agencia para realizar entrevistas y la preselección de candidatos. Por ello, concluyó que la alegación de que la designación de un Comité de Preselección de Candidatos constituyó una violación al reglamento de personal, resulta contraria a derecho. A su vez, concluyó que a Ibáñez se le reconoció su preferencia de veterano. También, luego de reseñar el proceso para incluir candidatos en el Registro de Elegibles, el procedimiento de entrevistas, puntuación y selección, la Jueza Administrativa coligió que el proceso de reclutamiento y selección se llevó a cabo de conformidad con el Reglamento de Personal y en armonía con el principio de mérito. Finalmente, indicó que la mera alegación de elementos subjetivos resulta insuficiente si ello no acarrea hechos materiales en disputa que puedan afectar el resultado de su reclamación. Resaltó que hubo descubrimiento de prueba en el que Ibáñez tuvo la oportunidad de indagar sobre cualquier elemento que entendiera meritorio, sin embargo no presentó prueba para demostrar la existencia de controversia sobre

---

[1] Véase *Resolución Final,* apéndice del recurso, págs. 115-116.

un hecho material, solamente descansó en sus alegaciones. En cuanto al discrimen político, resolvió que Ibáñez no presentó los elementos de la reclamación. Por último, concluyó que Ibáñez no logró probar que el proceso de entrevistas fuera defectuoso, así como tampoco impugnó los cómputos de las puntuaciones otorgadas a los candidatos, por lo que al proceso le asiste una presunción de legalidad y corrección que no logró ser derrotada.

En desacuerdo, Ibáñez compareció ante este Tribunal de Apelaciones en solicitud de revisión administrativa el 18 de septiembre de 2023. Planteó el siguiente error:

> Erró la Jueza Administrativa de la ACAA al dictar resolución sumaria desestimando la impugnación presentada por el recurrente, Sr. Héctor Ibáñez Hernández, con relación a la convocatoria número 22G-03, toda vez que existen controversias de hechos en el presente caso, así como elementos subjetivos.

Con el beneficio de la comparecencia de las partes, resolvemos.

II.

**A. Revisión Judicial y la doctrina de deferencia judicial**

La Sección 4.1 de la Ley Núm. 38-2017, Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico (LPAU), 3 LPRA sec. 9671, dispone que las decisiones administrativas pueden ser revisadas por el Tribunal de Apelaciones. Véase, *OEG v. Martínez Giraud*, 210 DPR 79, 88 (2022), citando a *AAA v. UIA*, 200 DPR 903, 910 (2018); Art. 4.006c de la Ley Núm. 201-2003, Ley de la Judicatura, 4 LPRA sec. 24y y la Regla 56 del Reglamento de Apelaciones, 4 LPRA Ap. XXII-B, R.56.

La finalidad de la revisión judicial es asegurar que los organismos administrativos actúen conforme a las facultades concedidas por ley. *OEG v. Martínez Giraud*, supra. Es norma reiterada que, al revisar las determinaciones de los organismos administrativos, los tribunales apelativos le conceden deferencia,

por la experiencia y el conocimiento especializado que estos poseen. *Hernández Feliciano v. Mun. Quebradillas,* 211 DPR 99 (2023), 2023 TSPR 6, resuelto el 20 de enero de 2023.

Por su parte, la Sección 4.5 de la LPAU, 3 LPRA sec. 9675, establece que los tribunales deben sostener las determinaciones de hechos de las agencias si están basadas en "evidencia sustancial que obra en el expediente administrativo". *Super Asphalt v. AFI y otro,* 206 DPR 803, 820 (2021). Como vemos, la norma anterior nunca ha pretendido ser absoluta. Por eso, el Tribunal Supremo ha resuelto con igual firmeza que, los tribunales no podemos imprimirle un sello de corrección, so pretexto de deferencia, a las determinaciones o interpretaciones administrativas irrazonables, ilegales, o simplemente, contrarias a derecho. *Graciani Rodríguez v. Garage Isla Verde*, 202 DPR 117, 127 (2019).

Por otro lado, la citada Sección 4.5 de la LPAU, *supra*, dispone que "[l]as conclusiones de derecho serán revisables en todos sus aspectos por el tribunal". Aun así, se sustituirá el criterio de la agencia cuando no se pueda hallar fundamento racional que explique o justifique el dictamen administrativo. La intervención judicial en las determinaciones administrativas debe ocurrir cuando la decisión administrativa no se fundamente en evidencia sustancial o cuando la agencia se equivoque en la aplicación de la ley. *Rolón Martínez v. Supte. Policía*, 201 DPR 26, 36 (2018), citando a *OCS Universal,* 187 DPR 164, 179 (2012). De otra parte, "los tribunales deben darle peso y deferencia a las interpretaciones que la agencia realice de aquellas leyes particulares que administra". *Íd.*, págs. 36-37. Lo anterior responde a la experiencia y al conocimiento especializado que tienen las agencias sobre los asuntos que le son encomendados. *Capó Cruz v. Jta. Planificación et al.,* 204 DPR 581, 591 (2020).

Por consiguiente, dada la presunción de corrección y regularidad que reviste a las determinaciones de hecho elaboradas por las agencias administrativas, estas deben ser respetadas mientras la parte que las impugne no produzca evidencia suficiente para derrotarlas. *Graciani Rodríguez v. Garage Isla Verde,* supra, pág. 128, citando a *Otero v. Toyota,* 163 DPR 716, 728 (2005). Al revisar las decisiones de las agencias, el criterio rector que debe guiar a los tribunales es la razonabilidad de la actuación. *Hernández Feliciano v. Municipio de Quebradillas,* supra.

Por lo tanto, si al momento de examinar un dictamen administrativo se determina que: (1) la decisión administrativa no está basada en evidencia sustancial; (2) la agencia erró en la aplicación de la ley; (3) el organismo administrativo actuó de manera irrazonable, arbitraria o ilegalmente; o (4) su actuación lesiona derechos constitucionales fundamentales, entonces la deferencia hacia los procedimientos administrativos cede. *Íd.*

Acorde con lo antes expuesto, la revisión judicial de los dictámenes administrativos está limitada a determinar si hay evidencia sustancial en el expediente para sostener la conclusión de la agencia o si esta actuó de forma arbitraria, caprichosa o ilegal. *Íd.* Por tanto, las determinaciones de hecho deberán sostenerse siempre que estén fundamentadas en evidencia sustancial que surja de la totalidad del expediente administrativo. *Capó Cruz v. Jta. Planificación et al.,* supra.

Así las cosas, cuando una parte afectada por un dictamen administrativo impugne las determinaciones de hecho, esta tiene la obligación de derrotar con suficiente evidencia que la decisión del ente administrativo no está justificada por una evaluación justa del peso de la prueba ante su consideración. *Rebollo v. Yiyi Motors,* 161 DPR 69, 77 (2004). *OEG v. Martínez Giraud,* supra. De no identificarse y demostrarse esa otra prueba en el expediente

administrativo, las determinaciones de hechos deben sostenerse por el tribunal revisor, pues el recurrente no ha logrado rebatir la presunción de corrección o legalidad. *O.E.G. v. Rodríguez,* 159 DPR 98, 118 (2003).

B. **La adjudicación Sumaria de Controversias en los Foros Administrativos**

En lo atinente a la disposición sumaria de los recursos en el ámbito administrativo, la LPAU permite que las agencias emitan órdenes o resoluciones sumarias si concluyen, luego de analizar los documentos que acompañan la solicitud y la moción en oposición -así como aquellos que obren en el expediente de la agencia- que no es necesario celebrar una vista adjudicativa. Sec. 3.7, inciso (b) de la LPAU, 3 LPRA sec. 9647. En cambio, no podrán disponer de manera sumaria cuando la ley orgánica de la agencia disponga lo contrario o cuando existan hechos materiales o esenciales controvertidos; haya alegaciones afirmativas en la querella que no han sido refutadas; surja de los propios documentos que se acompañan con la petición una controversia real sobre algún hecho material y esencial, o como cuestión de derechos no proceda. *Íd.*; *OCS v. Universal,* 187 DPR 164 (2012).

Una parte prevalece por la vía sumaria cuando esta logra establecer que no se configuró algún elemento de la causa de acción, o cuando es evidente que la parte demandante no cuenta con la evidencia suficiente para probar su caso. *López v. Miranda,* 166 DPR 546, 566 (2005). Por otro lado, la parte promovida debe establecer, mediante prueba, que aún hay hechos materiales en controversia. *Íd.*, a la pág. 563.

Finalmente, cabe señalar que, como norma general, las Reglas de Procedimiento Civil no aplican de manera automática a los procedimientos administrativos. *Pérez v. VPH Motors, Corp.,* 152

DPR 475, 484 (2000). El objetivo de esta norma es que los organismos administrativos tengan un funcionamiento más flexible, ágil y sencillo, pues de lo contrario, se frustraría su propósito principal. *Íd.*

## C. Principio de mérito e idoneidad del candidato seleccionado

En el campo laboral público rige el principio de mérito. *Rosa Maisonet v. ASEM,* 192 DPR 368, 383 (2015); *López v. C.E.E.,* 161 DPR 527, 537 (2004) y *Martínez v. Ofic. del Gobernador,* 152 DPR 586, 596 (2000). Este principio busca garantizar que aquellas personas que estén empleadas por el Gobierno se seleccionen y se retengan exclusivamente en consideración a sus méritos e idoneidad. *González Segarra et al. v. CFSE,* 188 DPR 252, 280 (2013), citando a A. Cuevas Biret, *La negociación colectiva y el sistema de mérito en Puerto Rico,* San Juan, [s. Ed.], 1974, pág. 16. La clave es la idoneidad del aspirante. *Martínez v. Ofic. Del Gobernador,* 152 DPR 586, 596 (2000). La idoneidad del funcionario público, de ordinario viene atada a la aptitud profesional, entendida ésta como la capacidad para ejercer un cargo u oficio de modo competente por poseer el conocimiento profesional necesario. Sin embargo, la aptitud profesional, si bien es un elemento importante, es una condición necesaria, pero no suficiente para considerar a una persona como idónea para ejercer un cargo. También forma parte de la idoneidad de carácter, entendida ésta como "el conjunto de cualidades personales, al margen de la preparación profesional, que tiene el funcionario y que afectan o pueden afectar el desempeño de su cargo".[2]

## D. Convocatorias para cubrir puestos de carrera en la ACAA y normas internas de reclutamiento

---

[2] S. Steidel Figueroa, Ética de los jueces: Apuntes sobre su objeto y metodología, VI Ethos Gubernamental, Revista del Centro para el Desarrollo para el pensamiento Ético, a la pág. 217 (2008-2009).

Sobre el proceso de reclutamiento, el Reglamento de Personal dispone que, luego de corregir los exámenes se deberá establecer un registro de elegibles en orden descendente de notas con el nombre de las personas que hayan aprobado el examen. Sección 9.4. En cuanto a la sección 9.5, la Resolución 2020-MAYO-7A, modificó sus términos para disponer lo siguiente:

> El Director Ejecutivo designará un comité de 3 o más empleados o funcionarios para realizar las entrevistas y la preselección de candidatos. Además, tendrá discreción para nombrar varios comités de entrevistas de preselección cuando lo entienda necesario. En cualquier caso, el comité o los comités podrán estar compuestos por el Director de Recursos Humanos, el director de la oficina o departamento y cualquier otro designado.

E. **Nueva carta de derechos del veterano puertorriqueño del siglo XXI, Ley 203-2007**

La Ley Núm. 203-2007, conocida como *Nueva Carta de Derechos del Veterano Puertorriqueño del Siglo XXI*, (Carta de Derechos del Veterano)[3] dispone que el Gobierno de Puerto Rico y sus agencias deben "[d]ar preferencia a un veterano, en igualdad de condiciones académicas, técnicas o de experiencia, en su nombramiento o concesión de ascenso para cualquier cargo, empleo u oportunidad de trabajo". Art. 4(F)(a)(1), 29 LPRA sec. 737. Específicamente en cuanto al puntaje garantizado al veterano, la Carta de Derechos del Veterano establece lo siguiente:

> En aquellos casos en los cuales, como parte de un proceso de empleo, un veterano hubiere tomado cualquier prueba o examen como parte de una solicitud de ingreso, de reingreso o de ascenso, y dicho veterano hubiere obtenido, en la correspondiente prueba o examen, la puntuación mínima requerida para cualificar para el ingreso, reingreso o ascenso al correspondiente cargo, se garantiza el derecho de dicho veterano a que se le sumen diez (10) puntos o el diez por ciento (10%), lo que sea mayor, a la calificación obtenida por dicho veterano en la correspondiente prueba o examen. Art. 4(F)(a)(3), *Id.*

---

[3] 29 LPRA sec. 735

Por su parte, la Oficina de Capacitación y Asesoramiento en Asuntos Laborales y de Administración de Recursos Humanos (OCALARH) aprobó el Reglamento Núm. 7452, *Carta Normativa Especial Núm. 1-2007; Normas que regirán las acciones de personal en las que apliquen las áreas esenciales al principio de mérito*, el cual establece que "[s]i la certificación de elegibles figura el nombre de un(a) veterano(a) y éste(a) está disponible, tendrá preferencia sobre aquellos candidatos con una puntuación igual o inferior a la de él o ella". Reglamento Núm. 7452, Parte V(B)(12). Asimismo, al interpretar la normativa aplicable, la OCALARH aclaró que "en un registro de elegibles donde figure un veterano disponible, las Autoridades Nominadoras tienen que darle preferencia sobre aquellos candidatos con puntuación igual o inferior. Esto significa que no se puede seleccionar a candidatos con puntuaciones iguales o inferiores a la del veterano". Memorando Especial Núm. 45-2015 sobre *Normas sobre derecho a preferencia y concesión de puntuación adicional a la calificación para empleo al veterano*, pág. 4.

F. **Discrimen político**

El Tribunal Supremo expresó que un empleado público de confianza tiene un caso *prima facie* de discrimen político cuando demuestra "(1) que no hay un motivo racional para su despido, y (2) que ha sido sustituido por una persona que pertenece a un partido distinto al suyo, el cual es el mismo de la autoridad nominadora."[4] *López v. Miranda*, 166 DPR 546, 559 (2005), que cita

---

[4] Vale la pena destacar que la gran mayoría de las decisiones emitidas por este Tribunal respecto a la materia en controversia ha atendido el discrimen político dentro de una situación en que el empleado público es de confianza y ha sido despedido; esto es, la elaboración de normas probatorias para establecer el discrimen político se ha dado dentro de este contexto. En atención a ello, es necesario señalar que en el presente caso ni se trata de empleados de confianza ni de una demanda por despido. Trata de unas alegaciones hechas por empleados de carrera que alegan que el patrono realizó ciertos actos – alegadamente motivados por discrimen político- que resultaron perjudiciales para ellos. Ello no obstante, somos del criterio que la normativa que expondremos a continuación, la cual trata sobre empleados de confianza que han sido despedidos, aplica también, sustancialmente, al empleado de carrera y que abarca situaciones como las del presente caso donde el empleado alega actos del patrono que le fueron perjudiciales. *López v. Miranda*, 166 DPR 546, 559 (2005).

a *Rodríguez Cruz v. Padilla Ayala*, 125 DPR 486 (1990); *McCrillis v. Aut. Navieras de P.R.*, 123 DPR 113 (1989); *Báez Cancel v. Alcalde Mun. de Guaynabo*, 100 DPR 982 (1972). Además, el empleado también debe demostrar que está identificado claramente con un partido político, y que ha sido sustituido por una persona de un partido distinto al suyo. *Rodríguez Cruz v. Padilla Ayala, supra*, a la pág. 502.

El Tribunal de Apelaciones de Estados Unidos para el Primer Circuito señaló que los cuatro elementos que debe probar un demandante, en una acción por discrimen político, son los siguientes: "'(1) que el demandante y el demandado tienen afiliaciones políticas opuestas, (2) que el demandado es consciente de la afiliación del demandante, (3) que ocurrió una acción laboral adversa, y (4) que la afiliación política fue un factor sustancial o motivador de la acción laboral adversa'." (Traducción suplida.) *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 13 (1st Cir. 2011), que cita a *Lamboy–Ortiz v. Ortiz–Vélez*, 630 F.3d 228, 239 (1er Cir.2010). Así, no basta con una mera alegación de que exista discrimen político. *López v. Miranda*, 166 DPR 546, 561 (2005).

III.

En síntesis, Ibáñez plantea en su señalamiento de error, que incidió la Jueza Administrativa al resolver el caso mediante resolución sumaria, ya que aún existían hechos en controversia, así como elementos subjetivos, que, a su entender, deben dilucidarse en una vista evidenciaria.

La *Moción Solicitando Resolución Sumaria del Caso*, presentada por la ACAA estuvo fundamentada con evidencia documental, tales como la solicitud de empleo de Ibáñez, más copia de las hojas de entrevistas de este y de la candidata seleccionada para demostrar que Ibáñez no resultó ser el candidato idóneo para el puesto.

Además, la agencia arguyó que Ibáñez no cumplió con los requisitos para probar haber sufrido un discrimen político en el proceso de selección.

La Jueza Administrativa resolvió conforme a la evidencia disponible en el expediente, mediante resolución sumaria por entender que no existían hechos materiales en controversia, que la ACAA no incumplió con su Reglamento de Personal y el principio de mérito durante el proceso de reclutamiento y selección para la convocatoria al puesto de Ayudante de Director de la Oficina Regional de Aguadilla, convocatoria 22G-03. También concluyó que tampoco hubo algún tipo de discrimen político en contra de Ibáñez y que mucho menos se incumplió con las disposiciones de la Ley 203-2007 con relación a la preferencia al veterano.

Es norma reiterada de derecho, que los tribunales debemos otorgar "deferencia a la aplicación del Derecho que realiza una agencia administrativa sobre la interpretación de las leyes y los reglamentos que esta[s] administra[n]." *Olmo Nolasco v. Del Valle Torruella*, 175 DPR 464, 470 (2009). De igual forma, las decisiones administrativas merecen gran deferencia de nuestra parte, las cuales debemos revisar bajo un criterio de razonabilidad. Lo esencial es que estas se sostengan "'por evidencia sustancial que surja del expediente administrativo considerado en su totalidad'." *Otero v. Toyota*, 163 DPR 716, 127-728 (2005), que cita a *Pacheco v. Estancias*, 160 DPR 409 (2003). Por lo cual, le corresponde al peticionario demostrar que existe otra prueba que sostenga que la actuación de la agencia no está fundamentada en evidencia sustancial o que reduzca el valor de la evidencia impugnada. Véase, *Borschow Hosp. v. Jta. de Planificación*, 177 DPR 545, 566 (2009).

Ibáñez tenía el peso de la prueba de demostrar que, como parte del proceso de selección de la Convocatoria 22G-03 para el puesto

de Sub Director de Finanzas no se siguió el procedimiento establecido por el Artículo 9 del Reglamento de Personal, enmendado mediante Resolución 2020-Mayo-7A, el cual regula la publicación de convocatorias, la realización de exámenes para cada clase de puesto, el establecimiento de un registro de elegibles, el proceso de entrevista y las recomendaciones del Comité de Preselección de Candidatos al Director Ejecutivo para que este lleve a cabo la selección final de la persona candidata que ocupará el puesto objeto de la convocatoria. No obstante, el recurrente no alegó, ni mucho menos logró probar, que el proceso de entrevista y examen fue de alguna manera defectuoso. Así, por ejemplo, Ibáñez no impugnó los cómputos que llevó a cabo la agencia para calcular las puntuaciones obtenidas por cada candidato, una vez evaluados los exámenes correspondientes. En ausencia de prueba en contrario, dichos exámenes se presumen correctos y válidos. Tampoco logró probar más allá de sus alegaciones, que su identificación político-partidista lo perjudicó.

Por otra parte, del expediente administrativo se desprende que la agencia cumplió con el derecho de preferencia establecido por la Carta de Derechos del Veterano al otorgarle los 10 puntos adicionales a la calificación obtenida, lo cual ubicó al recurrente en el tope de la lista de candidatos elegibles para entrevista. Por tanto, la preferencia dispuesta por la Ley Núm. 203-2007, el Reglamento Núm. 7452 y la carta normativa atinente se cumplió con la colocación inicial en el registro de elegibles en condiciones de preeminencia, pero sin garantía inexorable de cara a un proceso de entrevistas.

Por lo anterior, al igual que la Jueza Administrativa, resolvemos que procede la disposición del caso por la vía sumaria. Luego de evaluar el expediente administrativo, queda claro que no había ningún hecho material en controversia, y los hechos del caso no

justifican una vista evidenciaria. En cuanto a la alegación sobre discrimen político, Ibáñez no podía descansar en meras alegaciones, sino que estaba obligado a presentar prueba que sustentara las mismas. Ibáñez tampoco presentó ninguna prueba para contradecir la *Moción Solicitando Resolución Sumaria del Caso*, y establecer que aún hay hechos materiales en controversia. *López v. Miranda*, 166 DPR 546, 563 (2005).

Finalmente, en cuanto al asunto de que la designación de la candidata escogida fue contrario al reglamento, resolvemos que no tiene razón, dado que el reglamento permite un Comité de Preselección de Candidatos compuesto por tres (3) o más empleados o funcionarios, designados por el Director Ejecutivo, tal cómo ocurrió.

Por todo lo cual, en ausencia de una actuación arbitraria, ilegal, o irrazonable, no intervendremos con la determinación de la agencia. Resolvemos, que la misma es razonable, y está sostenida por evidencia sustancial que obra en el expediente administrativo.

IV.

Por los fundamentos expuestos, se confirma la *Resolución* recurrida.

**Notifíquese.**

Lo acuerda y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones