ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL I

| ASOCIACIÓN DE RESIDENTES DE BREÑAS ESTATES, INC., Recurrida, v. **SUCESIÓN DE WILFREDO MÁRQUEZ**, COMPUESTA POR SUCESORES X, Y, y Z, y **LÁGRIMA MARÍN**, viuda de WILFREDO MÁRQUEZ, Peticionaria. | TA2026CE00283 | *CERTIORARI* procedente del Tribunal de Primera Instancia, Región Judicial de Bayamón, Sala Superior de Vega Baja. Civil núm.: VB2023CV00666. Sobre: cobro de dinero. |
|---|---|---|

Panel integrado por su presidente, el juez Sánchez Ramos, la jueza Romero García y el juez Pérez Ocasio.

Romero García, jueza ponente.

SENTENCIA

En San Juan, Puerto Rico, a 9 de abril de 2026.

En una acción civil en cobro dinero por las cuotas reclamadas y presuntamente adeudadas por concepto de la instalación y mantenimiento del control de acceso de Breñas Estates (comunidad Breñas), la Asociación de Residentes de la comunidad reclamó a las sendas sucesiones de los esposos Wilfredo Márquez y Lágrima Marín (las sucesiones Márquez-Marín) los dineros adeudados.

Por su parte, las sucesiones plantearon que el cobro de dinero en tal concepto resultaba improcedente en tanto propusieron que el control de acceso era ilegal debido al incumplimiento con los requisitos para su implantación dispuestos en la Ley Núm. 21 de 20 de mayo de 1987, según enmendada, 23 LPRA sec. 65, *et seq.*, conocida como la *Ley de Control de Acceso* (Ley Núm. 21). A tales efectos, presentaron ante el foro primario una solicitud de sentencia sumaria, con el fin de que se decretase la nulidad de la instalación del control de acceso y, en su consecuencia, la inexistencia de las cuotas reclamadas.

Ante la negativa del foro primario de disponer sumariamente a su favor, las sucesiones Márquez-Marín instaron este recurso discrecional de *certiorari*.

Evaluadas las sendas posturas de las partes litigantes, a la luz del derecho aplicable, concluimos que no les asiste la razón.

I

Según surge del expediente, los señores Wilfredo Márquez y Lágrima Marín, casados entre sí, adquirieron una propiedad ubicada en la comunidad Breñas, ubicada en el Barrio Sabana del Municipio de Vega Alta, allá para la década de 1960[1].

Dicha comunidad está constituida por una finca de 14.55 cuerdas de terreno, que **nunca ha sido segregada**[2]. Es decir, si bien los residentes han adquirido lotes de terreno y han edificado en ellos, lo cierto es que dicha finca no cuenta con permiso alguno de segregación, por lo que los propietarios son tales en **común proindiviso**.

Con ese trasfondo, el 5 de septiembre de 2023, la Asociación de Residentes de Breñas Estates, Inc. (Asociación), presentó una demanda sobre cobro de dinero contra la sucesión de Wilfredo Márquez y su viuda, Lágrima Marín[3]. En síntesis, reclamaron el pago de $41,700.00, por concepto de las cuotas de mantenimiento destinadas al mantenimiento de las áreas comunales, guardias de seguridad y el portón comunal de la comunidad Breñas, por ser estos titulares comuneros de una porción de ella.

---

[1] Apéndice del recurso, SUMAC TA, entrada núm. 187, anejo 1, pág. 5.

[2] *Íd.*, a las págs. 2-22.

[3] *Íd.*, entrada núm. 1. La demanda fue enmendada posteriormente para sustituir a la codemandada Lágrima Marín por sus sucesores. *Véase*, SUMAC TPI, entrada núm. 10.

Por su parte, el 22 de abril de 2024, las sucesiones Márquez-Marín[4] presentaron su contestación a la demanda y una reconvención[5]. Tras negar la mayoría de las alegaciones, plantearon sus defensas afirmativas; entre ellas, que las sucesiones no formaban parte de la Asociación y que siempre estuvieron en contra del cierre con control de acceso de la comunidad Breñas.

Como parte de su reconvención, reclamaron una partida por concepto de los presuntos daños y perjuicios ocasionados por la Asociación ante una supuesta restricción del acceso a su propiedad, así como la supuesta animosidad creada entre los miembros de la comunidad por la publicación de la deuda que se les imputa. Por ello, alegaron que tales actos menoscabaron el uso y disfrute de su propiedad.

Posteriormente, el 22 de mayo de 2024, la recurrida presentó su contestación a la reconvención instada por la señora Carmen Márquez, en la cual también negó las alegaciones en su contra y reiteró sus planteamientos iniciales[6]. Añadió que el cierre de la comunidad no era ilegal y que el cierre precedió la creación de la Asociación. Además, adujo que el causante Wilfredo Márquez formó parte de la directiva de la Asociación, y que este nunca se opuso al referido cierre.

Tras numerosas incidencias procesales, el 1 de diciembre de 2025, Carmen Márquez Marín, por sí y en representación de las sucesiones Márquez-Marín, presentó una solicitud de sentencia sumaria. En ella, solicitó que el tribunal declarara sin lugar la demanda presentada por la

---

[4] Si bien la coheredera Carmen Márquez Marín presentó originalmente sus alegaciones por derecho propio, posteriormente aclaró que las mismas se radicaron como heredera de ambas sucesiones y, además, a nombre de Wilfredo Enrique, Jaime Luis y Mayra, todos de apellidos Márquez Umpierre, como miembros de la sucesión de la causante Lágrima Marín. Adicionalmente, el coheredero Luis David Márquez Marín presentó su contestación a la demanda el 31 de julio de 2024, en la que reprodujo las mismas alegaciones de la coheredera antes mencionada. *Véase* SUMAC TPI, entradas núm. 38, 59 y 62.

[5] Apéndice del recurso, SUMAC TA, entrada núm. 29. La coheredera peticionaria había incluido entre sus alegaciones una demanda contra tercero dirigida a los oficiales que componen la Junta de directores de la Asociación en su carácter personal. Sin embargo, la misma fue desestimada sin perjuicio por el foro primario mediante su *Sentencia Parcial* del 1 de abril de 2025. *Véase*, SUMAC TPI, entrada núm. 90.

[6] Apéndice del recurso, SUMAC TA, entrada núm. 36.

Asociación, y que emitiera sentencia sumaria parcial para reconocer la existencia de los daños reclamados en su reconvención[7].

Adujo que no existía controversia de hechos en cuanto a la existencia de un sistema de control de acceso ilegal, dado que la Asociación no cumplió con los requisitos que prescribe la Ley Núm. 21, por lo cual solo restaba aplicar el derecho para determinar que las cuotas de mantenimiento reclamadas por la recurrida no eran válidas ni exigibles. En cuanto a su reconvención, solicitó una vista evidenciaria para establecer la cuantía correspondiente a los presuntos daños sufridos.

Por su parte, el 18 de diciembre de 2025, la Asociación reiteró sus argumentos previos mediante la presentación de su *Oposición a moción de sentencia sumaria*[8]. En esa misma fecha, el foro primario celebró una vista argumentativa a los efectos de discutir las posturas de las partes litigantes en cuanto a la solicitud de sentencia sumaria[9].

El 2 de febrero de 2026, el Tribunal de Primera Instancia emitió la resolución objeto de revisión en este recurso[10]. En ella, declaró sin lugar la solicitud de sentencia sumaria presentada por las peticionarias, tras determinar que existían controversias genuinas sobre hechos materiales que requerían la celebración de una vista en su fondo. Asimismo, determinó que no existía controversia en cuanto a los siguientes hechos materiales:

1. La descripción registral de la finca matriz en que está ubicada la comunidad de Breñas es la siguiente:

---"DESCRIPCION: RUSTICA: Parcela de terreno en el barrio Sabana de Vega Alta, Puerto Rico, compuesta de CATORCE PUNTO CINCUENTA Y CINCO CUERDAS (14.55 cdas.), equivalentes a cinco (5) hectáreas, sesenta y una (61) áreas y ochenta y siete (87) centiáreas de terreno y que colinda al Norte, con la zona marítima del Océano Atlántico; al Sur, con la carretera insular, Sección Dorado a Vega Baja; al Este, con terrenos de Clara Livingston y los que adquirió Estados Unidos a través de la Puerto Rico Reconstruction Administration y al Oeste, con resto de la finca principal de la cual se segrega."

---

[7] Apéndice del recurso, SUMAC TA, entrada núm. 177. Posteriormente, los peticionarios sometieron varios documentos adicionales para sustentar los planteamientos esbozados en su solicitud de sentencia sumaria. *Véase*, SUMAC TPI, entradas núm. 179 y 181.

[8] *Íd.*, entrada núm. 187; SUMAC TPI, entrada núm. 188.

[9] *Íd.*, entrada núm. 192.

[10] *Íd.*, entrada núm.193.

---Inscrita al Folio Doscientos Cuarenta y Seis (246) del Tomo Diecisiete (17) de Vega Alta, Puerto Rico, Finca Número Ochocientos Cincuenta y Cuatro (854), Registro de la Propiedad de Puerto Rico, Sección Tercera (III) de Bayamón, Inscripción Primera (1ra.)

---NOTA: Esta finca tiene más de doscientos noventa (290) inscripciones. **La misma es una comunidad indivisa**.

2. **La finca donde ubica la comunidad de Breñas es una parcela de terreno de 14.55 cuerdas, la cual constituye una comunidad de bienes en la que las participaciones que han sido vendidas a los residentes son en común proindiviso**.

3. **Los demandados (por derecho propio o por herencia), eran titulares comuneros de una cuota o porción de la finca conocida como Comunidad Breñas**, situada en el municipio de Vega Alta, Puerto Rico.

4. No todos los lotes en la comunidad tienen el mismo tamaño ni número de edificaciones.

5. La infraestructura eléctrica dentro de la comunidad fue instalada con fondos gubernamentales por la Autoridad de Energía Eléctrica (AEE), entidad gubernamental que conserva una servidumbre en la comunidad donde hace las instalaciones y reparaciones necesarias.

6. La infraestructura de acueductos dentro de la comunidad fue instalada con fondos gubernamentales por la Autoridad de Acueductos y Alcantarillados (AAA), entidad gubernamental que conserva una servidumbre en la comunidad donde hace las instalaciones y reparaciones necesarias.

7. El 23 de octubre del 2006, la Asociación de Residentes de Breñas Estates, Inc. se incorporó como una corporación sin fines de lucro con el número 50725.

8. En cuanto a las comunicaciones internas, la Asociación sostiene que comparte información financiera de las operaciones de preservación, seguridad y mantenimiento de la cosa común en la finca, incluyendo información sobre los demandados o los comuneros que adeudan cuotas o dineros correspondientes a su participación en la cosa común proindiviso.

9. El 18 de mayo de 2007, la Asociación de Residentes de Breñas Estates, Inc. por conducto de la Lcda. Nubia Z. Díaz Figueroa, envió una carta a la sucesión de Wilfredo Márquez y a Lágrima Marín cobrando cuotas de mantenimiento de control de acceso vencidas y citando como autoridad la Ley número 21 del 20 de mayo de 1987.

10. La Asociación de Residentes de Breñas Estates, Inc. incumplió con la Ley General de Corporaciones de Puerto Rico, Ley 164-2009, al no rendir informes o pagar derechos anuales correspondientes a los años 2017, 2018 y 2019.

11. El 31 de diciembre de 2019, el secretario de Estado del Gobierno de Puerto Rico canceló la Asociación de Residentes de Breñas Estates, Inc., registro número 50725.

12. No fue hasta el 12 de enero de 2022, que el secretario de Estado del Gobierno de Puerto Rico reactivó el certificado de incorporación de la Asociación de Residentes de Breñas Estates, Inc., registro número 50725.

13. El 15 de mayo de 1974, se incorporó la Asociación de Propietarios de Breñas, Inc. sin fines de lucro y con el número de registro 7315.

14. Los artículos de incorporación de la Asociación de Propietarios de Breñas, Inc., número 7315, estableció que los que quisieran ser miembros o socios debían ser propietarios de por lo menos un solar o casa en el barrio Breñas de Dorado y Vega Alta.

15. Los objetivos y propósitos incluidos en el certificado de incorporación de la Asociación de Propietarios de Breñas, Inc., número 7315, eran: promover las buenas relaciones entre los propietarios de Breñas, Barrio de Dorado y Vega Alta; promover el bienestar de los vecinos propietarios del Barrio Breñas; celebrar reuniones, asambleas y establecer sistemas entre los vecinos para mejorar las condiciones de vida en el referido sector.

16. La Asociación de Propietarios de Breñas, Inc., número de registro 7315, fue cancelada o revocada por el secretario de Estado del Gobierno de Puerto Rico el 16 de abril de 2014.

17. El 3 de abril de 1992, se incorporó otra Asociación de Propietarios de Breñas, Inc., pero con el número de registro 22562.

18. Los artículos de incorporación de la Asociación de Propietarios de Breñas, Inc., número de registro 22562, disponían que la participación de los propietarios era voluntaria.

19. La Asociación de Propietarios de Breñas, Inc., con el número de registro 22562, fue cancelada por el secretario de Estado del Gobierno de Puerto Rico el 16 de enero de 2007.

(Énfasis nuestro).

En desacuerdo con dicha determinación, las sucesiones Márquez-Marín presentaron oportunamente una moción de reconsideración[11], la cual fue declarada sin lugar mediante la *Resolución Interlocutoria* notificada el 11 de febrero de 2026[12].

---

[11] Apéndice del recurso, SUMAC TA, entrada núm. 195.

[12] *Íd.*, entrada núm. 197.

Aún inconformes, el 8 de marzo de 2026, las peticionarias instaron este recurso discrecional de *certiorari* y formularon los siguientes señalamientos de error:

Erró el tribunal al no incluir entre los hechos incontrovertidos aquellos que no fueron controvertidos por la Asociación con evidencia en su Oposición a Sentencia de Sumaria y denegar la sentencia sumaria.

Erró el tribunal al no aplicar la Ley de Control de Tráfico de Vehículos de Motor y Uso de Calles (Ley de Control de Acceso), Ley Núm. 21 de 20 de mayo de 1987, según enmendada, 23 LPRA sec. 64 et seq., al hecho esencial no controvertido y declarar que el sistema de control de acceso en Breñas es ilegal por lo que la Asociación no puede cobrar cuotas para sufragar el mismo.

Mediante la *Resolución* del 9 de marzo de 2026, concedimos a la recurrida un término de diez (10) días para que mostrara causa por la cual no debíamos expedir el recurso y revocar la *Resolución* recurrida. Luego de que le concediéramos una prórroga, el 24 de marzo de 2026, la Asociación compareció ante nos para exponer su posición en cuanto al recurso que nos ocupa.

Con el beneficio de la comparecencia de las partes litigantes, resolvemos.

II

A

La Regla 36.1 de Procedimiento Civil, 32 LPRA Ap. V, establece que una moción de sentencia sumaria debe estar fundada en declaraciones juradas, o por aquella evidencia que demuestre la inexistencia de una controversia sustancial de hechos esenciales y pertinentes. En su consecuencia, podrá dictarse sentencia sumaria cuando no exista ninguna controversia real sobre los hechos materiales y esenciales del caso y, además, si el derecho aplicable lo justifica. *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 430 (2013).

Un hecho material "es aquel que tiene un impacto sobre el resultado de la reclamación según el derecho sustantivo aplicable". *Ramos Pérez v. Univisión*, 178 DPR 200, 213 (2010). A su vez, la controversia relacionada a un hecho material debe ser real, "por lo que cualquier duda es insuficiente

para derrotar una Solicitud de Sentencia Sumaria". *Ramos Pérez v. Univisión*, 178 DPR, a las págs. 213-214.

De otra parte, al evaluar la solicitud de sentencia sumaria, "se tendrán como ciertos los hechos no controvertidos que consten en los documentos y las declaraciones juradas ofrecidas por la parte promovente". *Piñero v. A.A.A.*, 146 DPR 890, 904 (1998).

Con relación a los hechos relevantes sobre los cuales se plantea la inexistencia de una controversia sustancial, la parte promovente "está obligada a desglosarlos en párrafos debidamente enumerados y, para cada uno de ellos, especificar la página o el párrafo de la declaración jurada u otra prueba admisible en evidencia que lo apoya". *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR, a la pág. 432. Por su lado, la parte promovida tiene el deber de refutar los hechos alegados, con prueba que controvierta la exposición de la parte que solicita la sentencia sumaria. *López v. Miranda*, 166 DPR 546, 563 (2005).

Así pues:

> […] la contestación a la moción de sentencia sumaria tiene que ceñirse a ciertas exigencias en lo atinente a los hechos. Primeramente, recae sobre la parte que responde el deber de citar específicamente los párrafos según enumerados por el promovente que entiende están en controversia y, para cada uno de los que pretende controvertir, detallar la evidencia admisible que sostiene su impugnación con cita a la página o sección pertinente.
>
> De otra parte, puede también el oponente someter hechos materiales adicionales que alegadamente no están en disputa y que impiden se dicte sentencia sumaria. Le compete entonces, similar al proponente, enumerarlos en párrafos separados e indicar la pieza evidenciaria que los apoya con referencia específica al fragmento de esta en que descansa cada aserción. [...].

*SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR, a la pág. 432.

A esos efectos, procede que se dicte sentencia sumaria únicamente cuando de las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas si las hay, u otra evidencia, demuestran que no hay controversia real sustancial en cuanto a algún hecho esencial y pertinente, y, además, si el derecho aplicable así lo justifica. *Oriental Bank v. Caballero García*, 212 DPR 671,

678-679 (2023). Cumplidos estos requisitos, resulta innecesaria la celebración de un juicio, pues únicamente resta aplicar el derecho a los hechos no controvertidos. *Íd.*

En sentido contrario, no procede resolver un caso por la vía sumaria cuando: (1) existen hechos materiales y esenciales controvertidos; (2) hay alegaciones alternativas en la demanda que no han sido refutadas; (3) surge de los propios documentos que se acompañan con la moción una controversia real sobre algún hecho material y esencial; o, (4) como cuestión de derecho, no procede. *Echandi v. Stewart Title Guaranty Co*., 174 DPR 355, 368 (2008).

Finalmente, sobre el estándar de revisión apelativa sobre una solicitud de sentencia sumaria, nuestro Tribunal Supremo ha establecido que el foro apelativo intermedio está limitado a: "(1) considerar los documentos y argumentos que se presentaron ante el foro primario; (2) determinar si existe o no alguna controversia genuina de hechos materiales y esenciales, y (3) determinar si el Derecho se aplicó de forma correcta". *González Meléndez v. Mun. San Juan et al.*, 212 DPR 601, 611 (2023). Por tanto, los tribunales revisores nos encontramos en la misma posición que los tribunales de primera instancia, y empleamos los mismos criterios para evaluar una solicitud de sentencia sumaria. *Íd.*

B

La Ley Núm. 21 de 20 de mayo de 1987, según enmendada, conocida como *Ley de Control de Acceso* (Ley Núm. 21), 23 LPRA sec. 64, *et seq.*[13], fue promulgada con el fin de autorizar a los municipios a conceder permisos para **el control del tráfico de vehículos de motor y del uso público de las vías públicas** en paseos peatonales, calles, urbanizaciones y comunidades residenciales, públicas o privadas. 23 LPRA sec. 64-1. Ello, en aras de mejorar la seguridad y tranquilidad de las

---

[13] Vigente al momento de los hechos, y que fuera derogada mediante la aprobación de la Ley Núm. 107 de 14 de agosto de 2020, intitulada *Código Municipal de Puerto Rico*, 21 LPRA sec. 7001, *et seq.* No obstante, nótese que los Artículos 3.0011 al 3.017 del marco reglamentario vigente disponen lo relativo al sistema de control de acceso de las vías públicas, y mantienen esencialmente las mismas normas de la Ley Núm. 21. *Véase*, 21 LPRA sec. 7411-7427.

comunidades. *Residentes Sagrado Corazón v. Arsuaga*, 160 DPR 289, 300 (2003).

Para efectos de la referida Ley, su Sección 1 define las vías públicas como aquellas "operadas, conservadas o mantenidas para el uso general del público, por el gobierno estatal o municipal". 23 LPRA sec. 64(z). En contraste, las vías privadas son aquellas "operadas, conservadas o mantenidas por un Consejo, Asociación o Junta de Residentes, para beneficio de una urbanización u otra comunidad, sin que se utilicen fondos estatales o municipales para ello". 23 LPRA sec. 64(y).

Al amparo de la Ley Núm. 21, el concepto de control de acceso supone que las calles residenciales conservan su naturaleza pública, mientras se permite a los residentes instaurar medidas para controlar el tráfico vehicular y el uso público de estas, de manera que puedan velar por la seguridad y cultivar un ambiente adecuado para lograr una sana convivencia. *Caquías v. Asoc. Res. Mansiones Río Piedras*, 134 DPR 181, 187 (1993).

Sin embargo, resulta meritorio resaltar que nuestro marco jurídico actual admite la posibilidad de que existan calles residenciales cuya titularidad sea de naturaleza privada. *Watchtower Bible et al. v. Mun. Dorado I*, 192 DPR 73, 96 (2014). Ello en atención a que una calle pública es aquella destinada al uso público, de manera que es costeada y mantenida por el municipio que ostente su titularidad. *Íd*. De lo contrario, cuando no reúne tales características, nos encontramos ante una calle privada. *Íd*.

C

Una comunidad de bienes[14] existe cuando la propiedad de una cosa o de un derecho pertenece proindiviso a varias personas. Art. 326 del

---

[14] Como regla general, tal comunidad se rige por las disposiciones del Código Civil, salvo que exista un contrato o alguna disposición especial que la gobierne. Art. 326 del Código Civil, 31 LPRA sec. 1271. Esto es, las disposiciones generales de la comunidad de bienes no son aplicables a comunidades especiales como, por ejemplo, la medianería, la comunidad de bienes gananciales o el contrato de sociedad, los cuales cuentan con disposiciones especiales dentro del mismo Código. *Véase*, M. Albaladejo, *Comentarios al Código Civil y Compilaciones Forales*, Madrid, Ed. Rev. Der. Privado, 1985, T. V, Vol. II, pág. 57.

Código Civil, 31 LPRA sec. 1271[15]. Es decir, tal comunidad presupone que una cosa le pertenece a una pluralidad de personas, los cuales se convierten en cotitulares de esta por cuotas cualitativamente iguales. *Residentes Sagrado Corazón v. Arsuaga*, 160 DPR, a la pág. 307.

De esta manera, la participación de los comuneros sobre la comunidad de bienes será proporcional a sus respectivas cuotas, tanto en los beneficios como en las cargas, las cuales "[s]e presumirán iguales mientras no se pruebe lo contrario". Art. 327 del Código Civil, 31 LPRA sec. 1272.

Nuestro ordenamiento jurídico reconoce que los comuneros gozan de facultades plenas sobre su cuota particular, las cuales no son extensibles en cuanto al objeto de la comunidad. *Residentes Sagrado Corazón v. Arsuaga*, 160 DPR, a la pág. 308. Esto, pues las facultades en la participación sobre la cosa común se encuentran necesariamente subordinadas al derecho del resto de los comuneros. *Íd.* Por ello, se requiere algún grado de acuerdo o acción conjunta entre los cotitulares para realizar ciertas gestiones sobre la misma. *Íd.*

En lo pertinente, para realizar **actos de administración** sobre la cosa común, será necesario que se concreten acuerdos por una mayoría de los comuneros, los cuales serán obligatorios para el resto de la comunidad. Art. 332 del Código Civil, 31 LPRA sec. 1277; *Residentes Sagrado Corazón v. Arsuaga*, 160 DPR, a la pág. 308. A tales efectos, existe una mayoría cuando el acuerdo es tomado por aquellos partícipes "que representen la mayor cantidad de los intereses que constituyan el objeto de la comunidad". *Íd.*

Sobre qué constituye un acto de administración, el Tribunal Supremo de Puerto Rico ha expresado que:

> […] los actos de administración son aquellos que se requieren para contrarrestar los efectos de la duración o transcurso del tiempo en el valor de las cosas; son, como se ha dicho, los que salvan el valor presente de una cosa, sin comprometerla

---

[15] A pesar de que el Código Civil de Puerto Rico, Ed. 1930, fue derogado efectivo el 28 de noviembre de 2020, por el Código Civil de Puerto Rico de 2020, Ley Núm. 55 de 1 de junio de 2020, hacemos referencia al mismo, pues le aplica a la controversia de autos, dado que los hechos se suscitaron durante la vigencia del primero.

para el futuro. Son, también, los que permiten que una cosa se incremente con un valor que las circunstancias permiten aprovechar sin necesidad de exponerse a un riesgo o de sufrir un quebranto.

*Residentes Sagrado Corazón v. Arsuaga*, 160 DPR, a la pág. 310, citando a *De la Fuente v. A. Roig Sucrs.*, 82 DPR 514, 522 (1957).

Por tanto, los actos de administración son aquellos que no transforman la sustancia de la cosa común, sino que están encaminados al mero aprovechamiento de la cosa, con la finalidad de regular su uso y el modo en que se obtienen todas las utilidades que la cosa permita, sin alterar su condición natural. *Residentes Sagrado Corazón v. Arsuaga*, 160 DPR, a la pág. 310.

A base de lo anterior, el Tribunal Supremo concluyó que someter un inmueble a un **sistema de control de acceso** se cataloga "como un acto de administración y mejor disfrute de la cosa común"[16]. *Íd.*, a la pág. 311. Ello así, debido a que tal acto va dirigido a regular el uso de dicho inmueble para derivar un mejor disfrute de este, sin exponerlo a sufrir un quebranto ni transformar su sustancia. *Íd.*, a las págs. 311-312. Por consiguiente, la ejecución del acto aludido requiere el consentimiento de la mayoría de los partícipes en el bien inmueble objeto de la comunidad de bienes. *Íd.*, a la pág. 312.

III

Para disponer correctamente del presente recurso, resulta necesario que nos expresemos sobre la aplicabilidad de los estatutos citados por las partes litigantes previo a disponer sobre la procedencia de la solicitud de sentencia sumaria.

La contienda principal de la parte peticionaria es que el Tribunal de Primera Instancia incidió al no aplicar la Ley Núm. 21 para reconocer la implantación ilícita de un sistema de control de acceso en la comunidad Breñas. Ante ello, propone que el foro primario se equivocó al no dictar

---

[16] Tal conclusión se funda en que no puede catalogarse como un acto de conservación, en la medida en que tal sistema no es indispensable ni necesario para evitar el deterioro de la cosa común. Asimismo, tampoco constituye una alteración a la cosa común, puesto que controlar el acceso a esta no comprende un cambio en su sustancia ni en su destino, ni supone un acto de disposición. *Residentes Sagrado Corazón v. Arsuaga*, 160 DPR, a la pág. 311.

sentencia sumaria para declarar sin lugar la demanda de cobro de dinero instada por la Asociación, dado que no tiene facultad legal para reclamar cuotas de mantenimiento para sufragar la operación de un sistema de control de acceso ilegal.

Las sucesiones Márquez-Marín insisten en que la Asociación estaba obligada a cumplir con el proceso que prescribe la Ley Núm. 21 para cerrar la comunidad Breñas. Sobre esto, aducen que la recurrida nunca solicitó la autorización del Municipio de Vega Baja para instaurar el sistema de control de acceso impugnado, en contravención de los requisitos establecidos en la ley especial.

Adicionalmente, alegan que los servicios de acueductos y de energía fueron instalados en la comunidad Breñas con fondos gubernamentales y que el recogido de los desperdicios sólidos es realizado por el gobierno municipal. Por ello, sostienen que la infraestructura de dicha comunidad fue establecida y mantenida con fondos públicos, lo que se traduce en que la calle principal deba ser catalogada como una vía pública, a la cual le aplica la Ley Núm. 21.

Por su parte, la Asociación sostiene la inaplicabilidad de la Ley Núm. 21 a la comunidad Breñas, en tanto esta es una finca privada de la cual nunca se han segregado solares, por lo cual todos los propietarios que residen en ella son dueños de la comunidad en común proindiviso. Por tanto, arguye que se constituyó una comunidad de bienes a la cual le aplica exclusivamente las disposiciones del Código Civil de 1930. En virtud de ellas, alega que tenía la facultad de implementar un sistema de seguridad y cobrar las cuotas para su conservación como un acto de administración mediante el acuerdo de la mayoría de los comuneros.

En cuanto a la naturaleza del camino principal que discurre por la comunidad, la recurrida arguye que el mismo constituye una vía privada interna, que nunca se traspasó al Municipio de Vega Baja, ni se dedicó al uso público. Además, afirma que su mantenimiento es costeado exclusivamente con la cuota de los comuneros de la comunidad Breñas.

En consecuencia, alega que no procede la aplicación de la precitada la Ley Núm. 21, ya que tal aplicación se limita al cierre de vías públicas mantenidas por los municipios.

Cual citado, la Ley Núm. 21 fue promulgada con el fin de facultar y regular las autorizaciones municipales relacionadas al control del tráfico de vehículos de motor y el uso público de las vías públicas en comunidades residenciales, sean estas públicas o privadas. Para que una vía sea catalogada como pública, la misma debe estar destinada al uso general del público, y ser operada y sufragada por el gobierno municipal o estatal que adquiera su titularidad. De lo contrario, la misma se cataloga válidamente como una calle privada a ser mantenida económicamente por una asociación para beneficio de una comunidad.

Por otro lado, nuestro Código Civil regula todo lo concerniente a la comunidad de bienes, la cual queda constituida cuando varias personas ostentan un derecho de propiedad en común proindiviso, y por cuotas, sobre una cosa en particular, como, por ejemplo, un inmueble. Los comuneros pueden concretar acuerdos para llevar a cabo actos de administración sobre la cosa común, lo cual obligará al resto de los comuneros, siempre que estos fuesen alcanzados por una mayoría de los partícipes de la comunidad. Así, estos pueden someter al inmueble objeto de la comunidad a un sistema de control de acceso como acto de administración, con el fin de regular su uso y derivar un mejor disfrute del inmueble.

Como bien precisaron ambas partes en sus escritos, la aplicabilidad de la Ley Núm. 21 queda supeditada a la naturaleza de las vías residenciales que discurren por la comunidad Breñas. Luego de examinar las alegaciones de las partes, en conjunto a la prueba documental que obra en el expediente judicial, contrapuestas al marco legal expuesto, no cabe duda de que las calles residenciales de la comunidad Breñas son de naturaleza privada, cuya titularidad pertenece a la Asociación.

Esto, pues no surge que tales calles fuesen construidas con fondos públicos, ni que hubieran sido traspasadas en momento alguno al Municipio de Vega Baja. De hecho, no surge del plano sometido por las peticionarias ni de la escritura pública sometida por la recurrida titularidad alguna a favor de algún ente gubernamental que afecte a la finca en la que se constituyó la comunidad Breñas[17].

Asimismo, el mero hecho de que el Municipio de Vega Baja recoja la basura de la comunidad Breñas no es fundamento jurídico que establezca que las vías que discurren por esta sean de naturaleza pública[18]. A igual conclusión llegamos en cuanto a las servidumbres a favor de la Autoridad de Acueductos y Alcantarillados (AAA) y a favor de la Autoridad de Energía Eléctrica (AEE)[19].

Por lo tanto, colegimos que las calles residenciales de la comunidad Breñas son de titularidad privada, mantenidas y operadas por la Asociación, por lo que quedan fuera del ámbito de las disposiciones de Ley Núm. 21. Esto pues, la precitada ley especial solo regula el cierre de las vías públicas en comunidades residenciales con el debido permiso municipal.

Ahora bien, según adelantáramos, es un hecho incontrovertido - admitido por ambas partes y sustentado por la prueba documental que obra en el expediente judicial - que la comunidad Breñas constituye una sola finca privada de 14.55 cuerdas, que nunca han sido segregadas. Por lo tanto, la totalidad de la finca pertenece en común proindiviso a todos los propietarios que allí residen, independientemente de la manera en que lotifiquen su propiedad. Los propietarios solo adquirieron en la finca una

---

[17] *Véase*, apéndice del recurso, SUMAC TA, entrada núm. 177, anejo 9, y entrada núm. 187, anejo 1, págs. 1-22.

[18] Como cuestión de derecho, las asociaciones de residentes o los miembros de una comunidad pueden negociar con los municipios para que estos últimos lleven a cabo funciones de mantenimiento. 21 LPRA sec. 7015(a).

[19] Como cuestión de hecho, no surge de los documentos provistos alguna servidumbre a favor de la AEE, aunque sí a favor de la AAA, lo cual no altera la naturaleza de la calle. Asimismo, surge de la prueba presentada por la recurrida que el sistema de alcantarillado ha sido sufragado con los fondos recolectados de las cuotas pagadas por los comuneros. *Véase*, apéndice del recurso, SUMAC TA, entrada núm. 187, anejo 1, pág. 24.

participación en una porción alícuota de la misma, con conocimiento de que esto los convertiría en miembros de la comunidad. Indudablemente, este es el tipo de comunidades que regula las disposiciones generales sobre la comunidad de bienes de nuestro Código Civil.

Por lo tanto, todo acto de administración ejecutado sobre la comunidad Breñas solo puede efectuarse mediante los acuerdos a los que lleguen la mayoría de los cotitulares, en consideración a la participación que adquirieron al incorporarse a dicha comunidad.

A tenor con lo anterior, y en virtud de que las calles de la comunidad Breñas son privadas, los comuneros de esta tenían plena facultad para establecer un sistema de control de acceso como una medida de seguridad para regular su uso y derivar un mejor disfrute de la finca objeto de la comunidad. Es decir, el cierre de las vías privadas que discurren por la comunidad Breñas es un acto de administración lícito conforme a las disposiciones de nuestro Código Civil que regulan la comunidad de bienes.

Surge claramente que la única exigencia para efectuar este acto era que mediara la aprobación de la mayoría de los comuneros de la comunidad Breñas al momento de su instauración; de lo cual, en efecto, no se ha presentado prueba, ni de las fechas relevantes al momento en que los acuerdos fueron alcanzados o de cuándo exactamente se implantó el sistema de control de acceso como medida de seguridad. Solo así el foro primario estaría en posición de determinar la validez del acto de administración, y de su obligatoriedad hacia el resto de los cotitulares en la comunidad Breñas.

De esta manera, y tal como discutimos, en cuanto al estándar de revisión apelativa sobre una solicitud de sentencia sumaria, nos encontramos en la misma posición que el tribunal primario. Por tanto, luego de considerar los documentos y argumentos que se presentaron ante el foro primario, nos vemos en la obligación de determinar si existe o no alguna controversia genuina de hechos materiales o esenciales, y si el derecho se aplicó de forma correcta.

Dicho esto, hemos evaluado con detenimiento las diecinueve (19) determinaciones de hechos no controvertidos contenidas en la resolución objeto de revisión, y concluimos que, con ellas, el foro primario adelantó significativamente la resolución del presente litigio. No obstante, coincidimos con el tribunal *a quo* en que aún persisten controversias medulares que requerirán de un juicio plenario.

En particular, resta por dilucidar cuáles fueron los acuerdos alcanzados por los comuneros para cerrar la comunidad Breñas, si alguno, y si, en efecto, medió la aprobación de la mayoría absoluta de los partícipes en dicha comunidad para concretar el cierre aludido conforme al Art. 332 del Código Civil de 1930[20].

Finalmente, en cuanto al error relacionado a la no inclusión de hechos propuestos y presuntamente no controvertidos en la *Resolución* recurrida, opinamos que a las peticionarias tampoco les asiste la razón. Nótese que estas se limitaron a alegar, de manera superficial, que la Asociación no cumplió con el estándar establecido en las Reglas de Procedimiento Civil para oponerse a su solicitud de sentencia sumaria.

Sin embargo, notamos que la oposición se ciñe a las exigencias de la Regla 36.3 de Procedimiento Civil[21], en tanto enumeró los párrafos que entendía controvertidos y no controvertidos, para los cuales proveyó una referencia a las alegaciones contenidas en el expediente judicial y a los anejos adicionalmente sometidos junto a su escrito, con la misma especificidad provista por las peticionarias.

Así pues, concluimos que el Tribunal de Primera Instancia no se equivocó en su interpretación ni la aplicación de la normativa aplicable para realizar sus determinaciones en cuanto a los hechos que estimó incontrovertidos, previo a denegar la solicitud de sentencia sumaria instada por las sucesiones Márquez-Marín. Por tanto, no incurrió en los errores señalados.

---

[20] 31 LPRA sec. 1277.

[21] 32 LPRA Ap. V, R. 36.3.

IV

Por virtud de lo antes expuesto, expedimos el auto de *certiorari* y confirmamos, aunque por diferentes fundamentos de derecho, la *Resolución* emitida y notificada el 2 de febrero de 2026, por el Tribunal de Primera Instancia, Sala Superior de Vega Baja. Ordenamos la continuación de los procedimientos de manera compatible con el derecho expuesto en esta sentencia.

Notifíquese.

Lo acordó y manda el Tribunal, y lo certifica la secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones